IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CREATION SUPPLY INC., | Case No.:_____ |
| Plaintiff, | |
| v. | **JURY DEMAND** |
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Creation Supply Inc. ("CSI") for its complaint against Defendant Selective Insurance Company of the Southeast ("Selective") states and alleges as follows:

## **NATURE OF THE CASE**

1. This is an insurance coverage action for violation of the Illinois Insurance Code Section 155 (215 ILCS 5/155), and breach of the covenant of good faith and fair dealing regarding Selective's refusal to defend CSI in the Too Marker Products, Inc. lawsuit styled *Too Marker Products, Inc. and Imagination International, Inc. v. Creation Supply Inc. and John Gragg* in the United States District Court for the District of Oregon, Eugene Division under case number 3:12-cv-00725-BR (hereinafter "the Too Marker Lawsuit" or "the Underlying Oregon Action") despite the circuit court's ruling that Selective has a duty to defend CSI in the Underlying Oregon Action.

## PARTIES AND JURISDICTION

2. Plaintiff Creation Supply Inc. is a corporation organized and existing under the laws of the State of Illinois having its principal place of business at 1314 Sunflower Lane, Minooka, Illinois 60447.

3. On information and belief, Defendant Selective Insurance Company of the Southeast (Selective) is an insurance company incorporated under the laws of the State of Indiana with its principal place of business in the State of North Carolina and licensed to issue business owner policies of insurance in the State of Illinois.

4. The Court has jurisdiction over these claims under 28 U.S.C. §§ 1332 and 1367, because, *inter alia*, the parties are citizens of different states, and the amount in controversy is over $75,000.00.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL COUNTS

**Selective's Insurance Policy**

6. Selective issued a policy of insurance bearing policy number S 1997299 to the named insured Creation Supply, Inc. for the effective period of August 19, 2011 to August 19, 2012 (the Policy). A copy of this Policy is attached as Exhibit 1.

7. Section II(A)(1)(a) of the Policy provides:

> We [insurer] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

8. Section II(A)(1)(b) of the Policy states in relevant part:

> This insurance applies:

2

      \*   \*   \*

   (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

9. "Personal and advertising injury" is defined in the Policy as:

  14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  \*   \*   \*
  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

10. The Policy makes certain exclusions to coverage, including:

  B. Exclusions
    1. Applicable to Business Liability Coverage

  This insurance Does not apply to:

     \*   \*   \*
  p. Personal And Advertising Injury

     \*   \*   \*
  (12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property right. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
  ***However, this exclusion does not apply to infringement, in your "advertisement", of copyright trade dress or slogan***.

(Emphasis added).

11. "Advertisement" is defined in the Policy as:

  1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purposes of this definition:
    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

3

      b.    Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

7.    "Suit" is defined in the Policy as "a civil proceeding in which damages because of "bodily injury", "property damage", or ""personal and advertising injury" to which this insurance applies are alleged.

**The Underlying Oregon Action (Too Marker Lawsuit)**

8.    Too Marker Products, Inc. and Imagination International, Inc. (collectively "Too Marker") filed the Underlying Oregon Action, captioned *Too Marker Products, Inc. and Imagination International, Inc. v. Creation Supply, Inc., et al.,* Case No. 3:12-cv-00735-BR (D. Ore), on April 25, 2012.

9.    Too Marker's complaint alleged that CSI's distribution of a line of marker products infringed upon, *inter alia*, Too Marker's federally registered trademark and trade dress.

10.    Due, inter alia, to (1) Selective's refusal to defend CSI in the Underlying Oregon Action; (2) CSI's manufacturer's refusal to contribute and indemnify CSI in the Underlying Oregon Action; and (3) to limit CSI's potential liability in the Underlying Oregon Action, CSI brought an action in the Northern District of Illinois on July 11, 2012 against the manufacturer of the allegedly infringing line of marker products, Alpha Art Materials, Co., LTD. ("Alpha"). That case was captioned *Creation Supply, Inc., v. Alpha Art Materials, Co., Ltd.,* Case No. 12-cv-05456 (N.D. Ill.) ("the Illinois Indemnification Action").

11.    On May 28, 2013, the Illinois Indemnification Action was transferred to the District of Oregon and consolidated with the Underlying Oregon Action, where like claims against Alpha were also pending.

**Selective's Denial of Coverage**

12. CSI has satisfied its obligations under the Selective policy.

13. CSI has made full premium payments under the Selective Policy

14. CSI provided Selective with timely notice of the Underlying Oregon Lawsuit.

15. CSI notified Selective of the Underlying Oregon Lawsuit and requested that Selective defend it in an email dated June 13, 2012.

16. In a letter dated June 22, 2012, Selective denied that the policy afforded any coverage to CSI in connection with the Underlying Oregon Lawsuit, alleging, among other things that there was no allegation of "personal and advertising injury" as the Underlying Oregon Lawsuit is based on trademark infringement, which is an exclusion in the Selective policy.

17. CSI responded in a letter dated July 5, 2012 to persuade Selective to reconsider its denial because the allegations in the Underlying Oregon Lawsuit relate to trade dress infringement, which is within the parameters of "personal and advertising injury" under the Selective policy, thus triggering Selective's duty to defend.

18. That same date, Selective's Complex Claims Counsel, David Hahn, contacted counsel for CSI by telephone and confirmed Selective's receipt of the July 5, 2012 letter and assured him that Selective will review the July 5, 2012 letter and reconsider Selective's coverage denial.

**Declaratory Judgment Action by Selective Against CSI**

19. In its letter dated July 10, 2012, Selective's outside counsel denied CSI's demand for coverage defense for virtually the same reason as stated in Selective's June 22nd letter and informed CSI for the first time about a lawsuit that Selective filed against the insured, CSI.

20. Apparently, on July 2, 2012, and unbeknownst to CSI and its counsel, Selective filed a declaratory judgment action against CSI styled *Selective Insurance Company of the Southeast v. Creations Supply, Inc., John Gragg, Too Marker Products, Inc., and Imagination International, Inc.,* in the Circuit Court of Cook County, Chancery Division under case number 12 CH 24438 (hereinafter "the Selective DJ Lawsuit"). A copy of the Selective Lawsuit complaint is attached as Exhibit 2.

21. As of July 2, 2012, CSI was involuntarily hauled into court in both Oregon, in the Underlying Oregon Lawsuit, and in Cook County, Illinois, in the Selective DJ Lawsuit.

22. Selective's bases for denial, as stated in the Selective DJ Lawsuit Complaint, includes that the Underlying Lawsuit did not allege claims falling within the Policy, and that certain exclusions barred coverage for the claims in the Underlying Lawsuit.

23. One of the bases for denial, as stated in the Selective DJ Lawsuit Complaint, is that no trade dress infringement claims were brought in the Underlying Lawsuit.

**SELECTIVE'S CONDUCT AFTER BRINGING ITS COMPLAINT AGAINST ITS INSURED**

24. During the Selective DJ Lawsuit and the Underlying Lawsuit, CSI provided Selective with additional court filings from the Underlying Lawsuit to show that a trade dress infringement claim was being brought against the Insured, CSI.

25. Upon information and belief, Selective did not consider the additional court filings from the Underlying Lawsuit for determining if a trade dress infringement claim was brought against the Insured, CSI.

26. On December 19, 2013, the Circuit Court found that Selective owed the Insured, CSI, a duty to defend in the Underlying Oregon Lawsuit as issue an order to that effect ("the Duty to Defend Judgment").

27. Prior to December 19, 2013, CSI had made several offers to Selective to discuss settlement of both the Underlying Oregon Case and the case in the Circuit Court. However, Selective refused to enter into such discussions.

28. On January 7, 2014, CSI served Selective with invoices already expended by CSI and asked to be paid under the Duty to Defend Judgment.

29. Selective did not respond to CSI's request made on January 7, 2014.

30. Instead, on January 9, 2013, Selective appealed the Duty to Defend Judgment.

31. On February 19, 2014, CSI served Selective with additional invoices expended by CSI and asked Selective for reimbursement.

32. Selective did not respond to CSI's request made on February 19, 2014.

33. On March 7, 2014, CSI brought a motion for recovery of attorneys' fees and enforcement of judgment in the Circuit Court.

34. On and before March 7, 2014, CSI had presented Selective with over $200K in invoices for Selective to pay. However, Selective had not paid anything to CSI.

35. Instead, on or about March 19, 2014, CSI offered to settle the amount owed for $35K.

36. On August 18, 2014, Selective had filed in the Circuit Court objections to the over $200K in invoices that Selective requesting be paid. These objections amounted to a sum of $39,480.00.

37. On August 19, 2014, CSI requested that Selective pay by August 26, 2014, $164,291.39 because Selective did not have any basis for continuing to withhold these funds to the determent of CSI.

38. On August 26, 2014, Selective responded that it would not pay anything to CSI because "[t]his matter is subject to a pending appeal and no court order has yet been entered on the amount of fees allegedly owned even absent the appeal."

## COUNT I – VIOLATION OF ILLINOIS INSURANCE CODE SECTION 155
## (215 ILCS 5/155)

39. CSI repeats and realleges the allegations of paragraphs 1- 38 as if fully set forth herein.

40. Selective's refusal to grant coverage to CSI under the Policy, and its failure to pay after having been judicially determined to have a duty to defend CSI is vexatious and unreasonable in violation of Section 155 of the Illinois Insurance Code.

41. Selective's vexatious and unreasonable conduct required CSI to incur unnecessary legal fees and expenses in defending itself and seeking indemnification in the Underlying Oregon Action, and in pursuing payment from Selective.

## COUNT II – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

42. CSI repeats and realleges the allegations of paragraphs 1- 38 as if fully set forth herein.

43. Selective's has breached the implied duty of good faith and fair dealing in ignoring the multiple request made by CSI.

44. Selective's vexatious and unreasonable conduct required CSI to incur unnecessary legal fees and expenses in defending itself and seeking indemnification in the Underlying Oregon Action, and in pursuing payment from Selective.

## PRAYER FOR RELIEF

WHEREFORE, CSI prays that this Court issue a judgment in CSI's favor and against Selective:

8

    a.    that Selective has violated Section 155 of the Illinois Insurance Code;

    b.    that Selective has breached the duty of good faith and fair dealing implied under the Policy;

    c.    awarding CSI all available statutory remedies under Section 155 of the Illinois Insurance Code, including but not limited to, all available penalties, costs, and attorneys' fees;

    d.    awarding CSI all available damages for Selective's breach of the implied duty of good faith and fair dealing;

    e.    awarding all applicable interest, costs, pre-judgment interest, attorneys' fees and such other and further relief at law and in equity, as this Court deems appropriate in the interests of justice.

## JURY TRIAL

Creation Supply, Inc. demands a jury trial on all claims set forth in this Complaint.

DATED: November 5, 2014                      Respectfully submitted by,

/s/Edward L. Bishop
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
BISHOP DIEHL & LEE, LTD.
1750 East Golf Road
Schaumburg, IL 60173
Phone: (847) 969-9123
Fax: (847) 969-9124

*Attorneys for Plaintiff Creation Supply, Inc.*