# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CREATION SUPPLY, INC.,                      )
                                            )
                      Plaintiff,       )
                                            )
                v.                      )          14 C 8856
                                            )
SELECTIVE INSURANCE COMPANY                 )
OF THE SOUTHEAST,                           )
                                            )
                   Defendant.       )

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Northern District of Illinois Local Rule 56.1.  For the following reasons, Plaintiff Creation Supply, Inc.'s ("CSI") motion for summary judgment is granted in part as to Count II, denied as to Count I, and Defendant Selective Insurance Company of the Southeast's ("Selective") motion for summary judgment is denied in its entirety.

## <u>BACKGROUND</u>

The following facts are taken from the parties' statements and exhibits filed pursuant to Local Rule 56.1.  The Court disregards any argument, conclusion, or assertion unsupported by the evidence in the record.  On May 26, 2012, CSI was served with a complaint.  It was sued in the United States District Court for the

District of Oregon in a lawsuit titled *Too Marker Products, Inc. et al. v. Creation Supply, Inc., et al.*, No. 3:12-cv-00735-BR (the "Oregon Action"). In the Oregon Action, Too Marker claimed that CSI sold a type of marker, MEPXY markers, which were similar to its own line of markers, Copic markers, alleging violations of the Lanham Act and trademark infringement. On June 13, 2012, CSI asked Selective, an insurance company that issued Insurance Policy Number S 1997299 to CSI from August 19, 2011 to August 19, 2012, to defend it in the Oregon Action. "Selective denied CSI's request for a defense under the Policy in a letter dated June 22, 2012" (the "denial letter"). On July 2, 2012, Selective filed a declaratory judgment action in the Illinois Circuit Court against CSI. "On July 5, 2012, Nicholas S. Lee ('Lee'), one of CSI's attorneys, wrote" a letter to David Hahn ("Hahn"), Selective's complex claims counsel, asking him to reconsider Selective's denial of CSI's requested defense. On July 10, 2012, Selective's counsel, Drew Block ("Block"), responded to Lee's letter, informing him that Selective "stood by its denial." The Oregon Action terminated by way of settlement on or around July 29, 2013.

On September 23, 2013, CSI "filed a renewed motion for partial summary judgment" against Selective in the Circuit Court, arguing "that it was entitled to coverage" because "certain retail store displays of the MEPXY markers constituted advertisements," and "a photograph of the display satisfied the causal nexus requirement by connecting the complained of advertising to the damages asserted." *See Selective Ins. Co. of Se. v. Creation Supply, Inc.*, 2015 IL App (1st) 140152-U, ¶

2

14. "[O]n December 19, 2013, the Illinois Circuit Court granted CSI's" motion. *Id.* at

¶ 15. Selective appealed the judgment on January 9, 2014.

On March 4, 2014, Selective presented a settlement offer of $35,000 to CSI. The next day, CSI's counsel advised Selective's counsel that the $35,000 settlement offer "was unacceptable, and therefore, settlement discussions would not be worthwhile." In an email dated August 7, 2014, Selective's counsel informed CSI "that due to the pendency of the appeal, and because the Circuit Court had not determined the amount that Selective must pay, Selective would not be fronting costs for trial preparation in the Oregon Action." The email further "stated that any defense obligation" that Selective had "ended when the trade dress infringement claims in the Oregon Action settled." Throughout the course of the litigation, CSI sent Selective invoices amounting to over $200,000. On August 18, 2014, Selective filed objections to the invoices, totaling $39,480.00, in the Circuit Court. A day later, CSI asked Selective to pay it $164,291.39. "On August 26, 2014, Selective responded that it would not pay anything to CSI because, (1) 'there [wa]s no 'uncontested' amount that [wa]s owed' even though there [wa]s a judicial finding of duty to defend CSI; and (2) '[the] matter [wa]s subject to a pending appeal and no court order ha[d] yet been entered on the amount of fees allegedly owed.'" On February 9, 2015, the Illinois Appellate Court found "that the allegations in the underlying complaint, the photograph of the retail product display, and the relevant policy language triggered Selective's duty to defend [CSI] in the underlying case," affirming the Circuit Court's

decision granting CSI's renewed motion for partial summary judgment. *Id.* at ¶ 54.

"Selective paid $178,000 to CSI on November 25, 2015." The "Circuit Court entered

final judgment in Selective's declaratory judgment action on June 21, 2016, and

awarded CSI $392,147.61."

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no

genuine dispute as to any material fact" and that it "is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a

reasonable jury could find in favor of the non-movant based on the evidence of

record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As with any

motion for summary judgment, a court considering cross-motions for summary

judgment will 'constru[e] all facts, and draw[ ] all reasonable inferences from those

facts, in favor of the nonmoving party.'" *Metro. Life Ins. Co. v. Unger*, No. 14 CV

07586, 2016 WL 5477523, at * 4 (N.D. Ill. Sept. 29, 2016) (quoting *Garofalo v. Vill.
of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014)).

## DISCUSSION

CSI asks that we enter judgment in its favor on Counts I and II of its first

amended complaint, while Selective moves us to enter judgment in its favor. CSI,

however, solely "moves for summary judgment as to Selective's *liability*,"

recognizing that it will prove damages at trial. (emphasis added). We begin with a

discussion of Count II, CSI's claim that Selective breached the insurance contract, Insurance Policy Number S 1997299, with CSI.

As an initial matter, Selective argues that it is entitled to summary judgment on CSI's Count II because collateral estoppel bars the breach of contract claim. "Collateral estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995). The burden is on Selective to establish each of these elements, and it has failed to meet its burden. *See id.* at 308.

Selective claims that CSI fully litigated the issue of consequential damages "in the form of lost profits" in the Oregon Action, and therefore, "it is collaterally estopped from re-litigating that issue here." Selective takes issue with CSI utilizing the same theory of liability in both actions—"that as a result of Selective's decision to pursue its coverage action, CSI was 'forced' to agree to an unfavorable settlement not to distribute the [MEPXY] markers," and thus lost profits. CSI made this argument in the Oregon Action against Alpha, the manufacturer of the MEPXY markers, whom CSI also sued for a defense and indemnification in the Oregon Action, and the court rejected it. However, CSI is correct in arguing that "[t]he two cases involve[ ] different causes of action, and potential recovery of consequential damages against

different parties for different reasons." CSI elaborates, stating that "[t]he issue in this case is whether CSI can show that it is entitled to recover" compensatory and consequential damages *against Selective*, "*as a result of Selective's breach of its insurance contract*." In contrast, CSI contends that the matter litigated in the Oregon Action "was whether CSI could recover *against Alpha*, . . . under 810 ILCS 5-312(3) *for breach of implied warranty against infringement*, its attorney's fees and expenses *caused by Alpha's breach*, or whether CSI could recover consequential damages *caused by Alpha's breach* under that statute." The fact that CSI pursues a similar argument against a different party does not bar its breach of contract claim in the instant matter. Selective's collateral estoppel argument, therefore, fails.

Turning to the merits, "[w]hen an insurer wrongfully refuses to defend a complaint, it is liable to the insured for breach of contract." *Regas v. Cont'l Cas. Co.*, 487 N.E.2d 105, 108 (1985). The well-known and "essential elements for breach of contract are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 529 (1993). CSI argues that "[n]o fact issues exist as to any of these elements," and therefore, it "is entitled to judgment as a matter of law on Count II" regarding Selective's liability. We agree and address each element in turn.

First, "Selective admits that it and CSI are parties to Insurance Policy No. S 1997299." Moreover, the Appellate Court found that CSI and Selective are parties to

6

the Policy. Thus, there is no factual dispute "that CSI and Selective are parties to a valid insurance contract." Second, CSI claims that there is no fact issue regarding CSI's performance of its obligation to pay premiums under the Policy. Selective admitted that CSI "made full premium payments." Therefore, there is no factual dispute "that CSI performed its obligations under" the Policy.

Third, CSI argues that there is no fact issue that Selective breached the contract by failing to defend CSI in the Oregon Action. It is undisputed that CSI was sued in the United States District Court for the District of Oregon. On September 23, 2013, CSI "filed a renewed motion for partial summary judgment" in the Circuit Court, arguing "that it was entitled to coverage" because "certain retail store displays of the MEPXY markers constituted advertisements," and "a photograph of the display satisfied the causal nexus requirement." *See Selective Ins. Co. of Se. v. Creation Supply, Inc.*, 2015 IL App (1st) 140152-U, ¶ 14. The Circuit Court granted CSI's renewed motion. *Id.* at ¶ 15. On February 9, 2015, the Appellate Court found "that the allegations in the underlying complaint, the photograph of the retail product display, and the relevant policy language triggered Selective's duty to defend [CSI] in the underlying case," affirming "the trial court's decision." *Id.* at ¶ 54. It is also undisputed that Selective did not defend CSI in the Oregon Action. It is undisputed, therefore, that Selective had a duty to defend CSI, and that it failed to do so, thereby breaching its contract with CSI.

Fourth, CSI contends that there is no fact issue that it was injured by Selective's breach in failing to defend it. "When an insurance company unjustifiably refuses to defend its insured, the measure of damages is (1) the amount of the judgment against its insured up to the policy limits unless the insurer was guilty of negligence, fraud or bad faith in which case there is liability for the full judgment; (2) expenses incurred by the insured in defending the suit; and (3) any additional damages traceable to its refusal to defend." *Chandler v. Doherty*, 702 N.E.2d 634, 640 (1998). Selective urges the Court to take a very narrow view of the "damages" element of a breach of contract claim. Selective contends that "CSI must show facts supporting a claim for consequential damages" because those are the damages pending before this Court, while the expenses that CSI incurred in defending the Oregon Action are "the subject of the state court action." Further, Selective argues that CSI has not presented "facts to support a claim for lost profits arising from Selective's coverage decision," and its failure is fatal to CSI and favorable to Selective. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

Selective is correct in asserting that "damages" are an essential element of a breach of contract claim, but it is wrong in arguing that for us to find it liable under a breach of contract theory, CSI must presently prove that it sustained consequential damages, specifically. By that logic, we should also ignore the state court holdings that found Selective had a duty to defend CSI in the Oregon Action and that it failed to do so. The Court need not turn a blind eye to the undisputed fact that CSI has

suffered an injury—compensatory damages—regardless of whether those particular damages will be proven by CSI in our courtroom.

The record is clear that Selective's breach in failing to defend CSI in the Oregon Action injured CSI. It is undisputed that the "Circuit Court entered final judgment in Selective's declaratory judgment action on June 21, 2016, and awarded CSI $391,147.61." Selective then "paid $178,000 to CSI on November 24, 2015." Moreover, CSI has alleged consequential damages. CSI claims that it "is seeking expenses that it was forced to incur in: (1) refuting Selective's declaratory judgment action that Selective lost; (2) defending against Selective's baseless appeal; [and] (3) being required to bring its motion for fees and costs against Selective for its baseless refusal to pay." CSI offers calculations by a financial expert, whose conclusions are criticized by Selective's own financial expert. Selective claims that CSI's alleged lost profits did not arise from the breach of contract, but from eight unrelated collateral transactions. Selective also contends, among others, that "for CSI to even assert a consequential damages claim, CSI would need to establish that: (1) even if CSI had not made a business decision to stop selling the markers in January 2012; and (2) even if Alpha would have entered into another distributorship with CSI; and (3) even if Selective would have defended the case; and (4) even if CSI would have risked an adverse verdict and litigated the underlying case to its conclusion, *CSI would have won the underlying case against Too Marker and would have been permitted to continue to distribute the markers*," and that CSI has "failed to present any evidence

that this . . . chain of events would have occurred." If Selective seeks summary judgment as to CSI's claim for lost profits, as it appears it does, then it must demonstrate that there is no genuine issue of material fact as to CSI's right to lost profits. It has failed to accomplish this through its conclusory arguments, which are devoid of specific facts. *See* Fed. R. Civ. P. 56(a).

Further, Selective seems to be overlooking the key fact that CSI is not moving for summary judgment on lost profits, if any. Had CSI moved for summary judgment regarding liability *and* the amount of damages that it may be entitled to, it would then be required to prove its lost profits due to Selective's declaratory judgment action and denial of coverage, if any. Selective can rest assured that CSI will not recover a windfall; however, no genuine issue of material fact exists regarding Selective's *liability* to CSI for breach of contract. Simply stated, "CSI did not receive the benefit of its insurance contract with Selective." Judgment as to Selective's liability on Count II is granted in CSI's favor. The sum of damages will be established at trial, and CSI will bear the burden of proving that consequential damages "were reasonably foreseeable, were within the contemplation of the parties at the time the contract was entered, or arose out of special circumstances known to the parties." *Mohr v. Dix Mut. Cty. Fire Ins. Co.*, 493 N.E.2d 638, 643 (1986); *see Santorini Cab Corp. v. Banco Popular N. Am.*, 999 N.E.2d 46, 51 (2013).

Next, Selective again tries to invoke collateral estoppel as a way of precluding CSI's Count I, which alleges that Selective violated Section 155 of the Illinois

Insurance Code. Selective argues that CSI already pursued a claim against it for vexatious and unreasonable conduct in the state court action, and the judge dismissed the Section 155 allegation "for failure to state a claim." Following dismissal, Selective contends that CSI did not assert "a Section 155 claim in the state court action or on appeal, even after final and appealable orders were entered." Therefore, Selective claims that collateral estoppel bars CSI's Count I. Further, even if it is not barred, Selective contends that CSI waived "its right to assert a claim for Section 155 sanctions . . . by failing to replead" it "while this matter was pending in the trial court or to preserve the claim on appeal."

Selective's arguments are peculiar, particularly when, according to CSI, the Illinois Circuit Court's order of final judgment stated:

> 4. Count II of CSI's amended counterclaims [Breach of Contract] is voluntarily dismissed without prejudice under 2-1009 with leave to refile allowed.
> 5. CSI's rights are expressly reserved to maintain its action against Selective in Federal Court (i.e., Case No. 14-cv-08856) regarding claims of breach of contract and violation of Section 155 of the Illinois Insurance Code.

CSI argues that "[w]aiver is the intentional relinquishment of a known right," and that its conduct establishes "the opposite of intent to waive" its claim. We agree with CSI. It is not precluded from bringing forth its Section 155 claim.

"[W]hether the insurer's action and delay is vexatious and unreasonable is a factual" question. *Millers Mut. Ins. Ass'n of Ill. v. House*, 675 N.E.2d 1037, 1043 (1997). "[T]he totality of the circumstances, taken in broad focus," determines if "an

insurer is guilty." *Id.* CSI claims that Selective violated Section 155 by, among

others:

> (1) issuing its baseless initial refusal to defend CSI; (2) its persistence in
> that refusal despite CSI providing information showing Selective the
> error of its refusal; (3) Selective's filing a declaratory judgment on the
> same baseless grounds for refusal, as well as additional grounds that
> Selective abandoned, and/or that the Illinois Appellate Court found
> baseless; (4) Selective's prosecution of a baseless appeal; (5) Selective's
> continued unreasonable refusal to settle payment of CSI's claim despite
> both the Illinois Circuit and Appellate Courts['] finding that Selective
> owed CSI a duty to defend; (6) Selective's attempts to settle CSI's claim
> for far less than it knew it was worth; (7) forcing CSI to seek
> indemnification from its supplier of the accused markers; and (8)
> Selective's exalting in saving money by not defending CSI in the Oregon
> Action.

Selective argues that "Section 155 does not apply where: (1) there is a *bona*

*fide* coverage dispute; (2) the insurer asserts a legitimate policy defense; (3) the claim

presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a

reasonable legal position on an unsettled issue of law." (citing *Citizens First Nat.*

*Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000);

*Providence Hosp. v. Rollins Burdick Hunter of Ill., Inc.*, No. 92 C 8096, 1994 WL

675008, at *5 (N.D. Ill. Nov. 30, 1994); *Selective Ins. Co. of the Se. v. Member's*

*Prop., Inc.*, 2016 IL App (1st) 143436-U ¶ 12; *Int'l Ins. Co. v. City of Chi. Heights*,

643 N.E.2d 1305, 1312 (1994)). Thus, Selective contends that it merely followed

Illinois law, which "states [that] an insurance carrier that questions whether it has an

obligation to defend an insured is expressly entitled to file a declaratory judgment

action . . . to determine whether such a duty exists." (citing *Employers Reinsurance*

*Corp. v. E. Miller Ins. Agency, Inc.*, 773 N.E.2d 707, 718 (2002)).  Whether Selective had a *bona fide* basis to deny coverage and seek a declaratory judgment is an issue of material fact precluding summary judgment for either party on Count I, as explained below.

First, CSI offers seven reasons in support of its argument that no fact issues exist that Selective's denial letter and its grounds for denying coverage were unjustified, examining each ground for denial individually and explaining why it believes it was baseless.  CSI also claims that the facts alleged in the Oregon Action complaint should have been liberally construed in its favor, and that as the insurer, Selective was obligated to defend CSI if its allegations potentially fell within the policy's coverage, which CSI claims it failed to do.  (citing *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 316 (2006)).  In opposition, Selective argues that the grounds for denial were not baseless, and that "simply because one or more of the bases for denial were ultimately determined to be wrong, does not mean that Selective did not have a *bona fide* basis to dispute coverage and proceed with its declaratory judgment."  This, Selective claims, "is particularly true here, where regardless of whether or not the underlying case alleged trade dress infringement, the infringement still needed to be in the insured's advertisement and a causal connection [had to exist] between the contents of the advertisement and the alleged damages," which it contends were *bona fide* issues.

Second, CSI contends that Selective also lacked a "factual or legal basis to file the declaratory judgment action" and assert a "lack of nexus" argument when "[n]umerous courts have recognized that in a trade dress infringement context, the products themselves . . . are inherently advertising." (citing *Flodine v. State Farm Inc. Co.*, No. 99 C 7466, 2001 WL 204786, at *10 (N.D. Ill. Mar. 1, 2001)). Further, CSI argued that "[t]he retail display [wa]s plainly in-store advertising for the marker, and as the Oregon plaintiff alleged, was a significant part of their infringement allegations." Thus, CSI contends that "there has always been a nexus between the advertising of the retail display and the injury as the Illinois Circuit and Appellate Courts both agreed." Selective highlights that "the photo was inserted into the controversy by CSI after more than a year of litigation as part of its renewed motion for partial summary judgment." In support of its contention that it had a *bona fide* basis to contest coverage, Selective points to the fact that the Circuit Court "initially denied both parties' motions for summary judgment," and "[t]he [A]ppellate [C]ourt wrote a lengthy opinion" discussing "whether a retail store display constituted an[ ] advertisement, and that if it did, whether that display met the causal connection requirement." CSI argues that although the Circuit Court "did not immediately grasp . . . a nexus does not" render "Selective's nexus argument, or its coverage denial for the trade dress infringement claim asserted against CSI" *bona fide*. Whether Selective "should have known that CSI's claim was covered" under the Policy is disputed.

Third, CSI claims that Selective was vexatious and unreasonable in its persistence in pursuing the declaratory judgment action despite information from CSI, which CSI claims showed that the grounds in the denial letter were baseless. This information includes an email dated December 12, 2012 from CSI's counsel to Selective's counsel, stating "that the plaintiffs in the Oregon Action . . . answered CSI['s] counterclaims" and conceded that trade dress infringement was a subject matter in the Oregon Action. Nonetheless, Selective maintained that it did not owe CSI a defense. Selective claims that its "duty to defend could only be based on allegations against CSI in the underlying complaint," and that simply because it and "its counsel did not agree with CSI's coverage position is not a basis for sanctions under Section 155, particularly when Selective had already filed a timely complaint for declaratory judgment."

Fourth, Selective waited until November 24, 2015—nearly two years after the Circuit Court found that it had a duty to defend—to pay CSI $178,000, which CSI contends was vexatious and unreasonable. (citing *Keller v. State Farm Ins. Co.*, 536 N.E.2d 194, 205 (1989)). CSI argues that "Selective's liability to CSI became fixed when it improperly refused to defend" it in June 2012. (citing *Ins. Co. of the State of Pa. v. Protective Ins. Co.*, 592 N.E.2d 117, 123 (1992); *Associated Indem. Co. v. Ins. Co. of N. Am.*, 386 N.E.2d 529, 541 (1979)). Even after the Circuit and Appellate Courts both concluded that Selective had a duty to defend CSI, Selective refused to make payments to CSI for costs that it incurred. CSI also contends that Selective

"admitted liability for the Circuit Court's $392,147.61 judgment," therefore it claims that there is no disputed amount.

Selective, in contrast, argues that "there was no delay" in payment. First, Selective points to the Circuit Court's order dated May 23, 2016, which stated "that neither the trial court nor the appellate court ever ordered Selective to tender payment to CSI in any amount." Selective claims that, despite this, it "voluntarily tender[ed] payment to CSI in the amount of $178,000." Second, Selective argues that the amount that it "may owe CSI for the costs allegedly incurred in the defense of the underlying case remains unresolved." Selective contends that the full judgment is "subject to the pending appeal," and it may "await final judgment from the court" before paying or appealing. Selective concludes that "if the trial court's final judgment on the amount owed is affirmed on appeal," it "would be required to comply with the order and reimburse the costs;" however, until then, Selective claims that it does not have an "obligation to front the costs claimed by CSI." According to CSI, Selective's argument is contrary to case law. Moreover, CSI argues that "even assuming that Selective could wait until its liability was decided, Selective failed to pay any of the $178,000 amount it admitted was no longer subject to appeal for more than nine months after that appeal was decided," which was vexatious and unreasonable. (citing *Am. States, Ins. Co. v. CFM Constr. Co.*, 923 N.E.2d 299, 309 (2010)).

Finally, the parties point fingers at one another, each arguing that the other refused to negotiate a settlement in good faith. CSI contends that Selective's "lowball" settlement offer of "$35,000 for more than $200,000 in fees and expenses on CSI's claim" was itself vexatious and unreasonable. (citing *McGee v. State Farm Fire & Cas. Co.*, 734 N.E.2d 144, 153 (2000); *Valdovinos v. Gallant Ins. Co.*, 733 N.E.2d 886, 890 (2000)). Selective, in contrast claims that it "attempted to elicit a reasonable settlement demand by making a number of unsolicited offers," while all of CSI's demands included sanctions.

Section 155 demands a "totality of the circumstances" analysis in determining whether a party's conduct was vexatious and unreasonable, the parties disagree as to a number of the material facts which compose the inquiry, and the record is unclear for summary judgment for either party. Therefore, the Court denies both parties' motions for summary judgment as to Count I.

## CONCLUSION

For the foregoing reasons, CSI's motion for summary judgment is granted in part as to Count II, denied as to Count I, and Selective's motion for summary judgment is denied in its entirety.

Date: 2/17/2017

Charles P. Kocoras
United States District Court Judge