**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CREATION SUPPLY INC., | Case No.: 1:14-cv-08856 |
| Plaintiff, | |
| v. | **JURY DEMAND** |
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | **JUDGE: Charles P. Kocoras** |
| Defendant. | |

## CSI'S POST-TRIAL BRIEF

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. iv

    Cases ........................................................................................................ iv

    Statutes ..................................................................................................... vi

    Rules ........................................................................................................ vi

I.      SELECTIVE MISREPRESENTED CSI'S BURDEN OF PROOF DURING
        OPENING STATEMENTS ..................................................................................2

II.    SELECTIVE VEXATIOUSLY AND UNREASONABLY WITHHELD FROM
        CSI PAYMENTS OF UNDISPUTED OREGON ACTION DEFENSE FEES
        AND EXPENSES ...............................................................................................3

      A.     Selective's Failure To Pay Undisputed Fees and Expenses Shortly After
             Judge Flynn Found That Selective Had A Duty To Defend Was Vexatious
             And Unreasonable .............................................................................4

      B.     Selective's Appeal Of The Duty to Defend Is Irrelevant To Whether It
             Should Have Paid CSI's Fees And Expenses Incurred to Date .............6

      C.     Selective's Refusal To Pay CSI's Undisputed Fees And Expenses After
             August 2014 Was Vexatious And Unreasonable ....................................8

III.   SELECTIVE'S FAILURE TO PAY UNDISPUTED AMOUNTS EVEN AFTER
        THE ILLINOIS APPELLATE COURT AFFIRMED SELECTIVE'S DUTY TO
        DEFEND WAS ITSELF VEXATIOUS AND UNREASONABLE ..................................9

IV.   SELECTIVE'S BASELESS INITIAL EVALUATION FOR DENIAL OF
        COVERAGE WAS VEXATIOUS AND UNREASONABLE .......................................14

V.    SELECTIVE'S DENIAL OF COVERAGE FOR THE BASELESS GROUNDS
        STATED IN THE JUNE 22, 2012 LETTER WAS VEXATIOUS AND
        UNREASONABLE ............................................................................................16

      A.     Selective's Refusal To Cover The Trade Dress Infringement Conduct
             Alleged In The Oregon Complaint Was Vexatious And Unreasonable ...............16

      B.     Selective's Baseless Denial Of Coverage Under The Prior Publication
             Exclusion Was Vexatious and Unreasonable ........................................20

      C.     The Remaining Grounds In The June 22, 2012 Letter Were Also Baseless..........21

ii

VI.     SELECTIVE'S FILING OF A BASELESS DECLARATORY JUDGMENT
SUIT WAS VEXATIOUS AND UNREASONABLE ........................................22

VII.    HAHN'S CONFLICT OF INTEREST NEEDLESSLY PERPETUATING THIS
DISPUTE IS THE MOTIVATION FOR HIS VEXATIOUS AND
UNREASONABLE CONDUCT .....................................................................23

VIII.   CONCLUSION ............................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Allied Ins. Co. v. Bach*, 2007 U.S. Dist. LEXIS 13339, at *4-5 (N.D. Ill. Feb. 27, 2007) .......... 14

*Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 1005, 1008
(N.D. Ill. 2012) ................................................................................................ 18

*Bay Electric Supply, Inc. v. The Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 619-20
(S.D. Tex. 1999) ............................................................................................... 21

*Bedoya v. Illinois Founders Ins. Co.*, 293 Ill. App. 3d 668, 688 N.E.2d 757, 764-5
(1st Dist. 1997) ................................................................................................. 15

*Boehm v. Zimprich*, 68 F. Supp. 3d 969, 982 (W.D. Wis. 2014) ................................................. 15

*Buais v. Safeway Ins. Co.*, 275 Ill. App. 3d 587, 592-3, 656 N.E.2d 61, 65 (1st Dist. 1995) .......... 3

*Capitol Indemnity Corp. v. Elston Self-Service Wholesale Groceries, Inc.*, 559 F.3d 616,
620-21 (7th Cir. 2009) .................................................................................. 14, 21

*Central Mutual Ins. Co. v Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1081-82
(N.D. Ill. 2003) ................................................................................................ 14

*Eclipse Mfg. Co. v. United States Compliance Co.*, 381 Ill. App. 3d 127, 135,
886 N.E.2d 349 (2d Dist. 2007) ........................................................................ 13

*Ford Motor Credit v. Manzo*, 196 Ill. App.3d 874, 554 N.E.2d 480, 484 (1st Dist. 1990) .......... 11

*General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146,
165, 828 N.E.2d 1092 (2005) ..................................................................... 5, 12

*Green v. International Ins. Co.*, 283 Ill. App. 3d 929, 935, 605 N.E.2d 1125, 1129
(2d Dist. 1992) ......................................................................................... 2, 4, 8

*Illinois Emasco Ins. Co. v. Northwestern Nat. Cas. Co.*, 337 Ill. App. 3d 356, 785 N.E.2d 905,
907 (1st Dist. 2003) ........................................................................................ 5

*Ins. Co. of the State of Pa. v. Protective Ins. Co.*, 227 Ill. App. 3d 360, 592 N.E.2d 117, 123
(1st Dist. 1992) ................................................................................................ 5

*Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill. App. 3d 795, 803, 905 N.E.2d 976
(1st Dist. 2009) ................................................................................................ 15

*Janes v. Western State Ins. Co.*, 335 Ill. App. 3d 1109, 1117, 783 N.E.2d 37 (5th Dist. 2001) .... 15

*Keller v. State Farm Inc. Co.*, 180 Ill. App. 3d 539, 556, 536 N.E.2d 194 (5th Dist. 1989) ....... 4, 6

*Lawhon-Davis v. Reassure America Life Ins. Co.*, 2015 U.S. Dist. LEXIS 164043 at *19-20 (N.D. Ill., Dec. 8, 2015) ................................................................................................ 10

*Lexmark Int'l Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 135-6, 761 N.E.2d 1214, 1221 (2001) ........................................................................................................................ 18

*Marcheschi v. Illinois Farmers Ins. Co.*, 298 Ill. App. 3d 306, 698 N.E.2d 683 (1st Dist. 1998) .. 9

*Mathis v. Lumbermen's Mut. Cas. Ins. Co.*, 354 Ill. App. 3d 854, 860, 822 N.E.2d 543 (5th Dist. 2004) ................................................................................................... 11

*McGee v. State Farm Fire and Cas. Co.*, 315 Ill. App. 3d 673, 734 N.E.2d 144, 153 (2d Dist. 2000) ......................................................................................................... 7, 16

*Meier v. Aetna Life & Cas. Standard Fire Ins. Co.*, 149 Ill. App. 3d 932, 500 N.E.2d 1096, 1101-02 (2d Dist. 1986) ................................................................................... 11

*Millers Mutual Ins. Assoc. of Ill. v. House*, 286 Ill. App. 3d 378, 387, 675 N.E.2d 1037, 1043 (5th Dist. 1997) ........................................................................................ 2, 3, 23

*Mobil Oil Corp. v. Maryland Cas. Co.*, 288 Ill. App. 3d 743, 681 N.E.2d 552 (1st Dist. 1997) .. 12

*Mohr v. Dix Mutual County Fire Insurance Co.*, 143 Ill. App. 3d 989, 493 N.E.2d 638 (4th Dist. 1986) ........................................................................................................ 3

*Musser v. Gentiva Health Services*, 356 F.3d 751, 755 (7th Cir. 2004) .......................................... 3

*Myrda v. Coronet Ins. Co.*, 221 Ill. App. 3d 482, 492-3, 582 N.E.2d 274 (2d Dist. 1991) ........ 4, 7

*Norman v. American National Fire Ins. Co.*, 198 Ill. App. 3d 269, 304-5, 555 N.E.2d 1087 (5th Dist. 1990) ........................................................................................... 2, 4

*Ohio Cas. Ins. Co. v. PETsMART, Inc.*, 2003 U.S. Dist. LEXIS 22782 at *21 (N.D. Ill. Dec. 16, 2003) ........................................................................................ 5

*Peerless Enterprise, Inc. v. Kruse*, 317 Ill. App. 3d 133, 149, 738 N.E.2d 988, 1002 (2d Dist. 2000) ........................................................................................................ 6

*Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711, 577 N.E.2d 823 (5th Dist. 1991)..... 2

*Rosenburg v. Lincoln Am. Life Ins. Co.*, 883 F.2d 1328, 1335 (7th Cir. 1989) .......................... 2, 6

*Scottsdale Ins. Co. v. Chicago Scaffolding, Inc.*, 2015 U.S. Dist. LEXIS 105654 at \*24 (N.D. Ill. Aug. 11, 2015) ............................................................................... 6

*Scottsdale Ins. Co. v. Walsh Const. Co.*, 2011 U.S. Dist. LEXIS 111413 at \*21-22 (N.D. Ill. Sept. 29, 2011) ............................................................................ 12

*Shell Oil Co. v. AC&S, Inc.*, 271 Ill.App.3d 898, 649 N.E.2d 946, 953 (5th Dist. 1995) ........ 6, 12

*Smith v. Equitable Life Assurance Society of the United States*, 67 F.3d 611, 618 (7th Cir. 1995) ...................................................................................... 2

*Supreme Laundry Service, LLC v. Hartford Ins. Co.*, 521 F.3d 743, 749 (7th Cir. 2007) ........ 5, 10

*U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 193 Ill. App. 3d 1087, 1098, 550 N.E.2d 1032, 1039 (1st Dist. 1989) ..................................................... 14, 21

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 363, 860 N.E.2d 307 (2006) ........................................................................................... 4

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 359 Ill App. 3d 872, 834 N.E.2d, 562, 577 (2d Dist. 2005) ................................................................... 5, 6, 12

*Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066, 1068 (4th Dist. 1989) ......................................................................... 18

*Williams v. American Country Ins. Co.*, 359 Ill. App. 3d 128, 141, 833 N.E.2d 971 (1st Dist. 2005) ................................................................................. 4

*Zagorski v. Allstate Ins. Co.*, 2016 IL App (5th) 140056 at ¶¶26-7 (5th Dist. 2016) .................... 11

## **STATUTES**

Illinois Administrative Code Title 50, §919.50(a) ......................................................... 10

Section 154.6 of the Illinois Insurance Code, 215 ILCS 5/154.6 ................................... 11

Section 155 of the Illinois Insurance Code .................................................................. 3

## **RULES**

Trademark Manual of Examination Procedure (TMEP) §1202.02 .............................................. 17

This case boils down to one overarching theme. Selective, through its Complex Claims Counsel David Hahn, have used Selective's overwhelmingly superior resources to prevent CSI from receiving the rightful benefits of its insurance policy with Selective. Selective never expected CSI would be able to fight the baseless denial of a defense in the underlying Oregon trade dress infringement suit ("the Oregon Action"). Nevertheless, CSI refused to accept Selective's plainly erroneous coverage denial. Selective's response was to try to litigate CSI into submission.

Selective entrusted Hahn to act without supervision or accountability from Selective's management, to deny CSI's claim on baseless grounds, sue CSI on additional baseless grounds in an Illinois declaratory judgment action, and withhold payment of CSI's undisputed fees and expenses. Moreover, Selective's failure to defend CSI in the underlying Oregon Action forced CSI to defend itself and, because of a lack of funds, to eventually accept an injunction – a result in which Hahn exulted. Selective simultaneously forced CSI to litigate for five years in the Illinois courts, through two appeals, to recover even undisputed amounts CSI spent defending itself in the Oregon Action.[1] Hahn's *modus operandi* throughout this six-year dispute has been to make CSI litigate for every penny he knew CSI was entitled to, or to drive CSI into bankruptcy before it could collect anything. Selective's conduct, through its Complex Claims Counsel David Hahn, is vexatious and unreasonable in violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

---

[1] The Illinois Circuit Court in the person of Judge Flynn (PX-6) and the Appellate Court (PX-16) determined that Selective owed CSI a duty to defend in the Oregon Action. This Court granted CSI summary judgment that Selective breached the insurance contract (Dkt. No. 146).

## I.  SELECTIVE MISREPRESENTED CSI'S BURDEN
## OF PROOF DURING OPENING STATEMENTS

Contrary to Selective's representation during opening statements (Tr. 6:17-8:15)[2], CSI need not show Selective violated Section 155 by clear and convincing evidence.  "The question of whether the insurer's action and delay is vexatious and unreasonable is a factual one, and it is a matter for the discretion of the trial court." *Millers Mutual Ins. Assoc. of Ill. v. House*, 286 Ill. App. 3d 378, 387, 675 N.E.2d 1037, 1043 (5th Dist. 1997) (insurer's delay in paying undisputed amount was vexatious and unreasonable).  "As a result, the trial court's determination will not be disturbed on review unless an abuse of discretion is demonstrated in the record." 675 N.E.2d at 1044; *accord, Smith v. Equitable Life Assurance Society of the United States*, 67 F.3d 611, 618 (7th Cir. 1995) (violation of Section 155 due to inadequate investigation affirmed); *Rosenburg v. Lincoln Am. Life Ins. Co.*, 883 F.2d 1328, 1335 (7th Cir. 1989); *Norman v. American National Fire Insurance Co.*, 198 Ill. App. 3d 269, 303, 555 N.E.2d 1087, 1109 (5th Dist. 1990) (in determining whether insurer was vexatious and unreasonable, the trial court's discretion will not be disturbed, unless it can be shown to have been abused); *Green v. International Ins. Co.*, 283 Ill. App. 3d 929, 935, 605 N.E.2d 1125, 1129 (2d Dist. 1992); *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711, 577 N.E.2d 823 (5th Dist. 1991) ("[w]hat constitutes vexatious and unreasonable refusal is a matter for the trial judge's determination;" record supports finding of vexatious and unreasonable).  A court does not abuse its discretion unless: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary. *Musser v. Gentiva Health Services*, 356

---

[2] Selective's counsel promised (Tr. 8:9-15), but did not deliver, case law substantiating his claimed clear and convincing evidence burden.  That is because none exists.

F.3d 751, 755 (7th Cir. 2004).   As shown below, the record supports no other possible finding than Selective's vexatious and unreasonable conduct violated Section 155 by wrongly denying and delaying payments to CSI for almost two years.

## II.   SELECTIVE VEXATIOUSLY AND UNREASONABLY WITHHELD FROM CSI PAYMENTS OF UNDISPUTED OREGON ACTION DEFENSE FEES AND EXPENSES

Section 155 of the Illinois Insurance Code provides:

(1)     In any action by or against a company wherein there is in issue the liability of a company under a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)     $60,000

(c)     the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

No single factor is controlling in determining whether Selective is guilty of vexatious delay in refusing to defend or timely pay on CSI's claim.   Instead, the totality of the circumstances, taken in broad focus, will determine the matter.   *Millers Mutual*, 286 Ill. App. 3d at 387.   The court should consider the attitude of the insurer.   *Mohr v. Dix Mutual County Fire Insurance Co.*, 143 Ill. App. 3d 989, 493 N.E.2d 638 (4th Dist. 1986) (insurer ignored repeated attempts to meet to discuss dispute); *Buais v. Safeway Ins. Co.*, 275 Ill. App. 3d 587, 592-3, 656 N.E.2d 61, 65 (1st Dist. 1995) (when attitude of insurer is not only vexatious, but irritating, exasperating, and provoking, insured has right to relief under §155).   The purpose of §155 is not only to aid the insured, but also to discourage insurers from profiting by their superior financial positions while delaying payment of contractual obligations.   *Keller v. State Farm Inc. Co.*, 180 Ill. App. 3d 539, 556, 536 N.E.2d 194 (5th Dist. 1989) (delay in paying plaintiff's claim was

vexatious; further delay through appeal also vexatious); *Myrda v. Coronet Ins. Co.*, 221 Ill. App. 3d 482, 582 N.E.2d 274, 280 (2d Dist. 1991) (vexatious and unreasonable delay includes delay incurred by insurer's appeal of judgment). Section 155 is available to insureds who encounter unnecessary difficulties when an insurer withholds policy benefits. *Green v. International Ins. Co.*, 238 Ill. App. 3d 929, 935, 605 N.E.2d 1125 (2d Dist. 1992). Section 155 is intended to make suits by policyholders economically feasible and to punish insurance companies for misconduct. *Williams v. American Country Ins. Co.*, 359 Ill. App. 3d 128, 141, 833 N.E.2d 971 (1st Dist. 2005).

"Vexatious" as used in Section 155 means without reasonable or probable cause or excuse. *Norman v. American National Fire Ins. Co.*, 198 Ill. App. 3d 269, 304-5, 555 N.E.2d 1087 (5th Dist. 1990). As shown below, Selective's baseless denial of coverage, its baseless declaratory judgment action, and its spiteful withholding of payments of undisputed fees and expenses related to the Oregon Action was vexatious and unreasonable in violation of Section 155.

A.     Selective's Failure To Pay Undisputed Fees and Expenses
        Shortly After Judge Flynn Found That Selective Had A
        Duty To Defend Was Vexatious And Unreasonable

On December 19, 2013, Judge Flynn found that Selective owed CSI a duty to defend (PX-6). CSI forwarded to Selective for payment invoices for fees and expenses related to the Oregon Action beginning on January 7, 2014 (PX-7, 8, 9). Selective's failure to pay fees and expenses contained in such invoices shortly after Judge Flynn's ruling was itself vexatious and unreasonable. If the facts alleged in the Oregon complaint fell within, or potentially within, the policy's coverage, Selective was obligated to defend CSI. *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 363, 860 N.E.2d 307 (2006). This was true even if the

4

allegations were groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint fell within the potential coverage of the policy. *Id*. There only needed have been a mere possibility of coverage for the Oregon Action for Selective to have had a duty to defend. *Illinois Emasco Ins. Co. v. Northwestern Nat. Cas. Co.*, 337 Ill. App. 3d 356, 785 N.E.2d 905, 907 (1st Dist. 2003).

As a result of Judge Flynn's ruling, Selective's duty to defend CSI arose as soon as damages against CSI were sought in the Oregon Action, *Supreme Laundry Service, LLC v. Hartford Ins. Co.*, 521 F.3d 743, 749 (7th Cir. 2007), and continued so long as any questions remained concerning whether CSI's claim was possibly covered by the Policy. *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 359 Ill App. 3d 872, 834 N.E.2d, 562, 577 (2d Dist. 2005) (once a trial court has determined that insured has a duty to defend in the underlying lawsuit, that duty continues during the pendency of an appeal of the trial court's decision), *aff'd*, 223 Ill.2d 872, 860 N.E.2d 307 (2006), *citing*, *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 165, 828 N.E.2d 1092 (2005). Judge Flynn's December 2013 Order confirmed Selective's duty to defend. After that, there was no question that a possibility existed that CSI's claim was covered. Selective, therefore, had a duty to defend CSI and was liable for CSI's defense costs for the Oregon Action. Selective should have then paid CSI for all fees and expenses that were incurred to date. *Ohio Cas. Ins. Co. v. PETsMART, Inc.*, 2003 U.S. Dist. LEXIS 22782 at *21 (N.D. Ill. Dec. 16, 2003) (insurer had a duty to defend; ordered to pay insured attorneys' fees and expenses incurred to date while defending itself in ongoing underlying litigation); *Ins. Co. of the State of Pa. v. Protective Ins. Co.*, 227 Ill. App. 3d 360, 592 N.E.2d 117, 123 (1st Dist. 1992) (insurer under duty to defend must reimburse insured for defense costs as they are incurred); *Scottsdale Ins. Co. v. Chicago Scaffolding, Inc.*, 2015

U.S. Dist. LEXIS 105654 at *24 (N.D. Ill. Aug. 11, 2015) (insurer ordered to reimburse insured for defense costs incurred to date). Instead, Selective appealed, and used its appeal as an excuse for not timely paying CSI's Oregon Action fees and expenses.

> B.      Selective's Appeal Of The Duty to Defend Is Irrelevant
>         To Whether It Should Have Paid CSI's Fees And Expenses Incurred to Date

Selective is sure to argue that it need not have paid CSI anything after Judge Flynn ruled and while its appeal[3] on the duty to defend was pending. , as shown above, because Selective had the duty to defend CSI as long as a possibility of coverage existed, and Judge Flynn definitively confirmed that possibility, Selective's pending appeal had no bearing on whether it was required to pay CSI its fees and expenses. *Valley Forge*, 834 N.E.2d at 577 (once a trial court has determined that insured has a duty to defend in the underlying lawsuit, that duty continues during the pendency of an appeal of the trial court's decision); *Shell Oil Co. v. AC&S, Inc.*, 271 Ill.App.3d 898, 649 N.E.2d 946, 953 (5th Dist. 1995) (once a trial court finds a duty to defend, insurer has a duty to pay insured for underlying defense cost; that a final judgment was rendered in the underlying case before the appellate court affirmed the trial court's finding does not "allow an insurer to escape any penalty when it fails to provide one of the most important benefits of a liability policy - a defense").

Selective's likely appeal excuse also makes no sense as courts have repeatedly held that a vexatious and unreasonable delay under Section 155 includes any delay incurred by an insurer's appeal. *Rosenburg*, 883 F.3d at 1340; *Peerless Enterprise, Inc. v. Kruse*, 317 Ill. App. 3d 133, 149, 738 N.E.2d 988, 1002 (2d Dist. 2000); *Keller*, 180 Ill. App. 3d at 556 (delay in paying claim vexatious; further delay through appeal also vexatious); *Myrda v. Coronet Ins. Co.*, 221 Ill. App.

---

[3] Selective filed its Notice of Appeal of Judge Flynn's December 19, 2013 Order on January 9, 2014 (PX-252).

3d 482, 492-3, 582 N.E.2d 274 (2d Dist. 1991) (vexatious and unreasonable delay includes delay incurred by insurer's appeal). If a vexatious and unreasonable delay includes time spent on a losing appeal, it is nonsensical for Selective to argue that its appeal somehow excuses its delay.

Selective essentially placed a risky bet on whether the Illinois appellate court would reverse Judge Flynn. Instead, the appellate court affirmed Judge Flynn. It was Selective who decided to appeal, not CSI. Selective must face the consequences of its own ill-fated last-ditch foray in the appellate court.

Selective's excuse that it did not have to pay CSI anything until all potential appeals had been exhausted, and until Judge Flynn told it the exact amount it had to pay emphasizes its vexatious and unreasonable motivation to punish CSI. It simply reinforces that Hahn's tactic was to force CSI to litigate to the end to recover what it was rightfully due, thereby ensuring that any court victories against Selective would ring hollow from an economic standpoint.

Furthermore, Selective's refusal to pay fees and expenses it knew it owed, using Judge Flynn or the appellate process as camouflage, does not excuse its failure to pay where the pleadings did not establish a *bona fide* dispute as to coverage to begin with. *McGee v. State Farm Fire and Cas. Co.*, 315 Ill. App. 3d 673, 734 N.E.2d 144, 153 (2d Dist. 2000) (submission of claim to arbitration and subsequent payment do not defeat Section 155 claim). As shown below, there is nothing in the Oregon complaint from which Selective could even argue that the coverage dispute was *bona fide*. Selective also cannot argue that it required adjudication of the baseless denial of coverage and resolution of the simultaneous baseless declaratory judgment action it initiated before it could pay. That would defeat the purpose of Section 155, which is to permit the insured to obtain the amount due without the expense of going to court. *Green*, 605 N.E.2d at 1130.

As CSI's expert Mr. Leatzow testified (Tr. 384:7-385:22), Selective had the duty and obligation to review the invoices CSI forwarded to it, and to determine which fees and expenses it did not dispute, pay those, and contest the remainder. Instead, Selective flat out refused to pay anything, thus forcing CSI to turn to Judge Flynn for redress.

C. Selective's Refusal To Pay CSI's Undisputed Fees
And Expenses After August 2014 Was Vexatious And Unreasonable

After CSI moved for payment of its invoices, Judge Flynn gave Selective the opportunity to challenge CSI's invoices relating to the Oregon Action line by line. On August 18, 2014, Selective filed Objections to CSI's invoices for fees and expenses related to the Oregon Action (PX-100). As explained in CSI's letter of the next day (PX-15), Selective did not dispute $164,291.39 in fees and expenses. Accordingly, CSI requested payment from Selective of that undisputed amount. Nevertheless, Selective still paid nothing.

As of August 18, 2014, $164,291.39 in fees and expenses relating to the Oregon Action was not in dispute. This is buttressed by Hahn's acknowledgement in his September 22, 2014 log notes (PX-40), and his testimony thereon (Tr. 132:5-135:3; 136:1-6), that he knew Judge Flynn had provided adequate guidance to calculate the fees due to CSI for the Oregon Action. In those log notes, Hahn stated that "the trial court ruled preliminarily that defense costs will be limited to those expenses directly related to the defense of the underlying action and will not include legal fees related to affirmative claims and counterclaims and also against the importer [Alpha] and national distributor for indemnification and from whom our named insured had purchased the marker pens" (PX-40 at 936). Hahn believed that the court's ruling "changes the defense costs at issue from approximately $400,000 to approximately $163,000," but hoped to negotiate it down further (PX-40 at 936-7). On that same day, Hahn indicated in his notes that "the trial court has finally provided adequate guidance to set an expense reserve for the insured's

8

defense costs and this will be set in the underlying file where such expenses should be paid"
(PX-40 at 934). Thus, on August 18, 2014, or at the very latest, September 22, 2014, Selective
undoubtedly knew the undisputed amount it was to pay CSI for defense of the Oregon Action.
Any delay thereafter is vexatious and unreasonable. *Marcheschi v. Illinois Farmers Ins. Co.*,
298 Ill. App. 3d 306, 698 N.E.2d 683 (1st Dist. 1998) (affirmed trial court finding that a *bona fide*
dispute existed until insurer assessed liability and increased settlement authority to amount
eventually paid to insured as policy limit; further delay vexatious and unreasonable).

Still, Selective paid nothing. Moreover, Hahn patted himself on the back for withholding
payment of fees, and admitted that his decision not to defend led to CSI's having to take an
injunction in the underlying Oregon Action, while saving Selective from paying defense costs or
damages (PX-40 at 936):

> Please note that the underlying matter pending in USDC in Oregon which
> involved the Coverage B issues of unfair competition has settled and our insured
> paid nothing to resolve the case and agreed simply to discontinue distributing the
> marker pens in question. It's highly likely that our decision not to defend the
> insured in the underlying matter led to the "no pay" settlement without Selective
> being involved directly in the defense of the matter. On the other hand, had
> Selective defended the matter there is the very real potential that Selective would
> have contributed to the settlement.

Such reveling in the injury caused to CSI by Selective's wrongful denial of coverage
amply demonstrates Hahn's, and thereby Selective's, vexatious attitude toward CSI.

### III. SELECTIVE'S FAILURE TO PAY UNDISPUTED AMOUNTS EVEN AFTER THE ILLINOIS APPELLATE COURT AFFIRMED SELECTIVE'S DUTY TO DEFEND WAS ITSELF VEXATIOUS AND UNREASONABLE

On February 9, 2015, the Illinois Appellate Court affirmed Judge Flynn's December 19,
2013 ruling that Selective owed CSI a duty to defend (PX-16). Even using Selective's flawed
reasoning that it had every right to await the appellate court's decision before having any

obligation to pay CSI a dime for defense costs related to the Oregon Action,[4] then on that date Selective could no longer dispute, let alone have a *bona fide* dispute, whether it should have defended CSI. Likewise, Selective no longer had any viable ground to continue to withhold payment of CSI's undisputed fees and expenses related to the Oregon Action. *Lawhon-Davis v. Reassure America Life Ins. Co.*, 2015 U.S. Dist. LEXIS 164043 at *19-20 (N.D. Ill., Dec. 8, 2015) (where trial court found no duty to defend, and appellate court reversed, no viable ground to withhold payment thereafter; continued arguments that appellate decision not final and asserting position contrary to law was vexatious and unreasonable). Selective should have reimbursed CSI for undisputed expenses incurred to the date of the appellate court ruling. *See, e.g.*, *Supreme Laundry*, 521 F.3d at 749-50. As shown above, Hahn knew the undisputed amount Selective was to pay, however, he, on Selective's behalf, simply chose not to pay CSI anything for Oregon Action defense costs until November 24, 2015, *over nine months later* (Tr. 137:16-138:13; PX-18).

Instead, Selective forced CSI to continue litigating for nine months before making what Selective euphemistically calls a "voluntary" payment to CSI. And even then, paid nothing until after CSI sued Selective in this action for breach of contract and violation of Section 155 in November 2014 (Dkt. No. 1). There was nothing voluntary about such payment at all. That payment should have been made many months before. Selective knew that CSI was entitled to such payment, knew the undisputed fee amount, yet intentionally withheld it.

Such long, unjustified delay is contrary to the Illinois Administrative Code Title 50, §919.50(a) that requires payment of undisputed amounts within thirty days:

---

[4] As shown above, CSI disputes such notion.

**Section 919.50  Required Practices for all Insurance Companies**

> a)        The company shall affirm or deny liability on claims within a reasonable time and shall offer payment within 30 days after affirmation of liability, if the amount of the claim is determined and not in dispute.  *For those portions of the claim which are not in dispute and for which the payee is known, the company shall tender payment within said 30 days.*

(Emphasis added).  Selective's position, via its expert Mr. Hammond, that the Court is precluded from considering either §919.50(a) of the Illinois Administrative Code or Section 154.6 of the Illinois Insurance Code, 215 ILCS 5/154.6 as a factor in determining whether Selective violated Section 155, is completely wrong.  CSI is not seeking relief under Section 154.6.  Rather, CSI's claim arises under Section 155.  Courts have looked to both §919 and 154.6 as evidence of conduct that comprises an unfair claims practice. *Zagorski v. Allstate Ins. Co.*, 2016 IL App (5th) 140056 at ¶¶26-7 (5th Dist. 2016) (acts described in §154.6 of the Illinois Insurance Code are illustrative of conduct that may give rise to vexatious and unreasonable conduct under §155); *Ford Motor Credit v. Manzo*, 196 Ill. App.3d 874, 554 N.E.2d 480, 484 (1st Dist. 1990) (citing §§154.5 and 154.6 of the Illinois Insurance Code in finding violation of §155);  *Meier v. Aetna Life & Cas. Standard Fire Ins. Co.*, 149 Ill. App. 3d 932, 500 N.E.2d 1096, 1101-02 (2d Dist. 1986) (violation of Illinois Dept. of Insurance Rule 9.19 was part of basis for finding violation of Section 155); *Mathis v. Lumbermen's Mut. Cas. Ins. Co.*, 354 Ill. App. 3d 854, 860, 822 N.E.2d 543 (5th Dist. 2004) (while violation of 50 Ill. Admin. Code §919.80 did not provide basis for private cause of action, violation of the regulation is a fact that a court can consider in determining whether insurer waived time limitation provision).  Selective did not pay anything for nine months after the appellate court ruled, all the while Selective knew the amount of undisputed fees for the Oregon Action  In fact, Selective did not pay the full owed amount of fees and expenses, which includes further undisputed amounts, until almost two years later, in

August of 2017 (PX- 261; PX-335; PX-297), and then only until after two years of further litigation and an appeal. Such delay is vexatious and unreasonable.

Selective will also argue that CSI had already settled the trade dress infringement claims in the Oregon Action, and the so therefore, there was nothing left for Selective to defend. Settlement of the underlying trade dress claims did not extinguish Selective's duty to defend (Tr. at 391:10-19). *Mobil Oil Corp. v. Maryland Cas. Co.*, 288 Ill. App. 3d 743, 681 N.E.2d 552 (1st Dist. 1997) (insurer required to pay fees under Section 155 for declaratory judgment suit after settlement of underlying suit). Moreover, Selective had the obligation to pay for undisputed fees and expenses CSI had already incurred related to the underlying trade dress claims.

Selective's ostensible argument that it would be unfair to have it pay CSI's fees and expenses on the chance that it would prevail on appeal is contrary to Illinois law and Selective's own policy. As shown above, Selective was required to defend and reimburse CSI for fees and expenses while any appeal was pending. *Valley Forge*, 834 N.E.2d at 577; *Shell*, 649 N.E.2d at 953. It is also clear in Illinois that, unless the policy so provides, Selective is not entitled to reimbursement of defense costs. *Gen. Agents*, 215 Ill.2d at 166. This is true even where the court found that the insurer had no duty to defend. *Scottsdale Ins. Co. v. Walsh Const. Co.*, 2011 U.S. Dist. LEXIS 111413 at *21-22 (N.D. Ill. Sept. 29, 2011) (absent provision in policy insurer was not entitled to reimbursement of fees and costs where no duty to defend found).

Furthermore, CSI's Policy (PX-235 at CSI4-000114) provides that Selective may only seek reimbursement if it covers its insured under a reservation of rights:

**BUSINESSOWNERS COVERAGE FORM**

The following is attached to Section II – Liability Paragraph A. Coverages:

> If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

This provision only applies if Selective had initially defended CSI or had paid for CSI's defense. Selective did not defend CSI, nor pay for its defense, but rather sued CSI. Moreover, it only applies to costs incurred *after* Selective would notify CSI in writing that there may not be coverage, and that Selective was reserving its rights to terminate the defense and seek reimbursement. None of these conditions occurred, nor could they have as Selective did not defend CSI or pay defense costs. Therefore, this provision does not apply, and Selective would not be entitled to reimbursement of fees and expenses from CSI regardless.

Furthermore, as this Court found, Selective breached the insurance agreement. Selective cannot hold CSI to a provision of the very policy Selective repudiated when it failed to defend CSI. *Eclipse Mfg. Co. v. United States Compliance Co.*, 381 Ill. App. 3d 127, 135, 886 N.E.2d 349 (2d Dist. 2007) (insurer has no right to insist insured be bound by provisions of policy inuring to insurer's benefit when it has already breached the contract by failing to defend). Selective cannot insist that CSI follow provisions of an insurance contract that Selective had already breached.

In sum, Selective's failure to pay undisputed fees and expenses relating to the Oregon Action after Judge Flynn ruled, and to delay for nine months further after the appellate court affirmed CSI's duty to defend, and then only partially reimburse CSI for its fees and expenses, is vexatious and unreasonable under Section 155.

## IV.    SELECTIVE'S BASELESS INITIAL EVALUATION FOR DENIAL
OF COVERAGE WAS VEXATIOUS AND UNREASONABLE

Hahn's vexatious and unreasonable conduct towards CSI took multiple forms.  Hahn, Selective's Complex Claim Counsel, one day after receiving notice of CSI's claim for a defense in the Oregon Action, admitted to his Supervisor, David Richmond, that the allegations of the Oregon Complaint covered advertising injury (PX-303).  However, to make CSI fight for one of its most important rights under the policy – the provision of a defense – Hahn concocted a baseless pretext for denying CSI coverage for the Oregon Action: the Policy's knowing violation exclusion[5], an exclusion whose application Hahn knew Selective bore the burden of proving clear and free from doubt.  *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 193 Ill. App. 3d 1087, 1098, 550 N.E.2d 1032, 1039 (1st Dist. 1989).

Hahn invoked this exclusion even though he knew the Oregon Complaint alleged that CSI also acted grossly negligently (PX-20, ¶¶28, 34, 50, 57), and that trademark or trade dress infringement does not require knowledge or intent to be actionable under the Lanham Act (Tr. 44:9-22).  Moreover, Hahn's position is contrary to established law that allegations of intentional conduct under the Lanham Act do not fall under the knowledge exclusion. *Central Mutual Ins. Co. v Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1081-82 (N.D. Ill. 2003) (summary judgment that insurer had duty to defend); *Allied Ins. Co. v. Bach*, 2007 U.S. Dist. LEXIS 13339, at *4-5 (N.D. Ill. Feb. 27, 2007) (summary judgment that insurer had duty to defend despite charge of willful and intentional Lanham Act violations); *Capitol Indemnity*, 551 F. Supp. 2d 711, 726 (N.D. Ill. 2008), *aff'd* 559 F.3d 616 (7th Cir. 2009). (basis of underlying trademark infringement complaint did not require proof of intentional conduct to prevail; intentional conduct exclusion does not

---

[5] The knowing violation exclusion provides that the insurance does not apply to advertising injury: Caused by or at the direction of the insured *with the knowledge* that the act would violate the rights of another *and* would inflict "personal and advertising injury." (Emphasis added).

14

relieve insurer of duty to defend); *see also*, *Boehm v. Zimprich*, 68 F. Supp. 3d 969, 982 (W.D. Wis. 2014) (willfulness not an element of copyright infringement; alleging willfulness may lead to enhanced damages; intentional acts exclusion not implicated).   Hahn ignored the plain allegations of the Oregon Complaint and case law, and wrongly determined that Selective could avoid coverage on the face of the complaint that an exclusion that Selective had to show *clearly* applied.   Hahn's refusal to defend on this ground was completely baseless, and therefore, vexatious and unreasonable.   *Bedoya v. Illinois Founders Ins. Co.*, 293 Ill. App. 3d 668, 688 N.E.2d 757, 764-5 (1ˢᵗ Dist. 1997) (insurer arguments for no duty to defend that are contrary to established law support vexatious and unreasonable conduct under Section 155); *Janes v. Western State Ins. Co.*, 335 Ill. App. 3d 1109, 1117, 783 N.E.2d 37 (5ᵗʰ Dist. 2001) (delay in payment after clear precedent established can only be characterized as vexatious).

Hahn's invocation of the knowledge exclusion also purposefully and wrongfully construed the Oregon Complaint's intentional infringement allegations against CSI in contradiction of insurance custom and practice (Tr. 386:10-388:2; 393:7-394:9), the law[6], and his supervisor, David Richmond (Tr. 307:1-9).   Selective was required, as Hahn's own email (PX-303 at 3256) stated, to cover CSI if the Oregon Complaint raised *any possibility* of coverage.   Hahn's denial, essentially a factual finding that CSI had actually engaged in intentional conduct to deny coverage under the exclusion, is directly contrary to established case law.   *Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill. App. 3d 795, 803, 905 N.E.2d 976 (1ˢᵗ Dist. 2009) ("when a court is asked to determine whether an insured's conduct is covered under a

---

[6] *Valley Forge*, 223 Ill.2d at 363 (allegations of underlying complaint to be liberally construed in favor of insured).  Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *See, e.g., Smith,* 67 F.3d at 617.  The "knowing violation" exclusion's application must be clear and free from doubt. *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co*, 193 Ill. App. 3d at 1098.

policy, it must not determine disputed issues of fact which form the basis for the insured's liability in the underlying tort action;" "where *bona fide* controversies arise over the issue of negligence versus intentional conduct, declaratory judgment actions are premature until resolution of that question in the underlying tort case").

No *bona fide* dispute as to applicability of the knowing violation exclusion could possibly exist with neither a factual nor legal basis for that exclusion. Hahn's baseless invocation of such exclusion in the June 14 email and in his June 22, 2012 denial letter is, therefore, vexatious and unreasonable.

## V. SELECTIVE'S DENIAL OF COVERAGE FOR THE BASELESS GROUNDS STATED IN THE JUNE 22, 2012 LETTER WAS VEXATIOUS AND UNREASONABLE

Hahn officially informed CSI on June 22, 2012 (PX-2) that Selective was refusing to cover CSI's claim for defense of the Oregon Action on the ground that trademark infringement was not covered, and other grounds that lacked any basis in the Oregon Complaint. Hahn, again, rather than trying to assist CSI in finding coverage under the Policy as he should have, acted as CSI's opponent from the outset, and set baseless roadblocks to coverage against CSI – roadblocks designed to force CSI to litigate to recover what it was rightfully due. Hahn's June 22 letter fails to raise a single *bona fide* dispute as to whether coverage existed to allow him to deny CSI's claim on Selective's behalf. A *bona fide* dispute is one that is real, actual, genuine, and not feigned. *McGee*, 315 Ill. App. 3d at 683.

### A. Selective's Refusal To Cover The Trade Dress Infringement Conduct Alleged In The Oregon Complaint Was Vexatious And Unreasonable

As the Illinois Appellate Court held (PX-16 at ¶41), trade dress infringement claims are covered under the "personal and advertising injury" provisions of CSI's policy. Hahn admitted as much (Tr. 44:6-8). Hahn's litigation-induced rationalization that the Oregon Action stated

claims for trademark, as opposed to trade dress infringement, is the poster-child for a feigned

dispute. It is contrary to Hahn's own analysis, the law, and any even a cursory review of the

Oregon Action complaint.

A plain review of the Oregon Complaint (PX-20) shows that the complained-of conduct

in the First and Second Claims is that CSI sold markers having configurations confusingly

similar to the underlying plaintiff's two registered configurations (PX-39), i.e., trade dress, in the

marker designs[7] – the essence of trade dress infringement. Hahn's ostrich-like attempts to stick

---

[7] The U.S. Patent and Trademark Office, which issued the underlying plaintiff's registrations, in
its Trademark Manual of Examination Procedure (TMEP) §1202.02, equates trade dress with
configuration to include the design of a product:

> Trade dress constitutes a "symbol" or "device" within the meaning of §2 of the
> Trademark Act, 15 U.S.C. §1052. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529
> U.S. 205, 209-210, 54 USPQ2d 1065, 1065-66 (2000). **Trade dress originally
> included only the packaging or "dressing" of a product, but in recent years
> has been expanded to encompass the design of a product.** It is usually defined
> as the "total image and overall appearance" of a product, or the totality of the
> elements, and "may include features such as size, shape, color or color
> combinations, texture, graphics." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.
> 763, 764 n.1, 23 USPQ2d 1081, 1082 n.1 (1992).
>
> **Thus, trade dress includes the design of a product (i.e., the product shape or
> configuration), the packaging in which a product is sold (i.e., the "dressing"
> of a product), the color of a product or of the packaging in which a product is
> sold, and the flavor of a product.** *Wal-Mart* ., 529 U.S. at 205, 54 USPQ2d at
> 1065 (design of children's outfits constitutes product design); *Two Pesos,* 505
> U.S. at 763, 23 USPQ2d at 1081 (interior of a restaurant is akin to product
> packaging); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161
> (1995) (color alone may be protectible); *In re N.V. Organon*, 79 USPQ2d 1639
> (TTAB 2006) (flavor is analogous to product design and may be protectible
> unless it is functional). However, this is not an exhaustive list, because "almost
> anything at all that is capable of carrying meaning" may be used as a "symbol" or
> "device" and constitute trade dress that identifies the source or origin of a product.
> *Qualitex,* 514 U.S. at 162, 34 USPQ2d at 1162.

(Emphasis added). The TMEP goes on to state in §1202.02(f)(i):

his head in the sand and ignore the plain allegations of trade dress infringement in the Oregon Complaint demonstrate the vexatious and unreasonable lengths he will go to on behalf of Selective rationalize unjustifiable denial of coverage. There is no straight-faced way for anyone to say that there is no possibility that the Oregon complaint alleges trade dress infringement. Nevertheless, Hahn steadfastly refuses to recognize that the underlying plaintiff simply obtained federal registrations for its trade dress.

When comparing the policy to the allegations of the underlying complaint, Hahn was required not to focus on the particular legal theories, as he now feels he must do, but on the alleged tortious conduct stated in the complaint. *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 1005, 1008 (N.D. Ill. 2012). Courts look to the underlying allegations, not titles or legal theories stated in the complaint to determine coverage: "[w]e give little weight to the legal label that characterizes the underlying allegations. Instead we determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Lexmark Int'l Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 135-6, 761 N.E.2d 1214, 1221 (2001). "The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action." *Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066, 1068 (4th Dist. 1989).[8]

---

**Trade dress includes the three-dimensional design or configuration of the product itself.** In such cases, the drawing usually depicts the item listed in the identification of goods (e.g., the drawing shows a three-dimensional design of a guitar and the goods are "guitars").

(Emphasis added).

[8] Hahn even cited *Platinum Tech., Inc. v. Fed. Ins. Co.*, 2000 WIL 875881 (N.D. Ill. June 28, 2000) from this District to the effect that courts must look beyond particular legal theories in the

However, on the witness stand, Hahn doubled and quadrupled down on his blind *post hoc* rationalization that the Oregon Complaint only alleged infringement of registered trademarks, and therefore, could not possibly be trade dress infringement covered by the policy (Tr. 195:19-197:1; 250:14-253:5). Hahn's persistence in his trial testimony that the Oregon Complaint only alleges trademark and not trade dress infringement is a completely unreasonable attempted rationalization for his baseless ground for denying CSI coverage. This is especially true where need only be a possibility of coverage for Selective to be required to defend CSI. It is beyond the pale for Hahn to insist, in the face of the plain allegations of the Oregon Complaint, that no possibility of coverage existed for alleged trade dress infringement.

Hahn's denial on the grounds that the Oregon Complaint only alleges trademark infringement is also contrary to his own evaluation sent to Mr. Richmond, his supervisor. On June 14, 2012, Hahn wrote to Richmond, explaining that after reviewing the Oregon Action complaint and the Policy, he believed that the Oregon Action complaint "*do[es] raise an issue that the trademark infringement was caused by the insured's 'advertisement' and was not trademark infringement in and of itself.*" (PX-303 at 3255). Hahn then went on to cite case law from this District that trademark infringement could itself be considered advertising injury, obviating the professed basis for his trade dress/trademark infringement semantic gymnastics on the stand.

Hahn also ignores the Third Claim of the Oregon Complaint that alleges trade dress infringement as unfair competition under Section 43(a) of the Lanham Act (PX-20), and not

---

complaint, and focus on the alleged conduct (PX-303 at 3256). That same case law states that if a complaint states a claim that is even only potentially or arguably within the scope of coverage, then the insurer is obligated to provide a defense. Hahn also cited case law that the insurer may only properly refuse to defend if it is clear from the face of the complaint that the wrongdoing alleged is not covered by the policy.

infringement of a registered trade dress. He further ignores the Fourth Claim for common law infringement of the common law rights in the underlying plaintiff's trade dress, which cannot require a federal registration.

Hahn's persistence is even more egregious where, soon after being denied coverage, CSI forwarded to him additional information plainly showing that the underlying claim was clearly for trade dress infringement (PX-2; PX-41; Tr. 76:13-77:4; 80:16-81:15). Hahn ignored CSI's supplemental information. His continued persistence even to this day flies in the face of reality, as well as the Illinois appellate court's findings that the Oregon Complaint stated claims under trade dress infringement (PX-16 at ¶¶41, 47-8).

Hahn's intransigence despite the plain fact that the Oregon Complaint clearly states claims for trade dress infringement demonstrates the unreasonable and vexatious nature of his denial of coverage. It also demonstrates the baselessness of Selective's declaratory judgment complaint alleging the same grounds. Hahn never even analyzed in PX-303 or PX-2 whether the Oregon Complaint alleged trade dress infringement. Nor did he ever even attempt to explain why the Oregon complaint failed to state a claim for trade dress. Hahn's continued actions are symptomatic of his clear motivation – to deny CSI coverage on any frivolous ground and make CSI fight for the defense it was rightfully entitled to. Such motivation is vexatious and unreasonable.

B.    Selective's Baseless Denial Of Coverage Under The Prior
Publication Exclusion Was Vexatious and Unreasonable

CSI's Policy was effective from August 19, 2011 to August 19, 2012 (PX-235). Hahn admitted that the Oregon Complaint did not allege any time when CSI's alleged infringement began (Tr. 58:11-59:8). Instead, Hahn on examination by Selective's counsel, pointed to the registration dates of the configurations, and the dates of the registrant's first use (See, e.g.189:11-

193:7) to justify his baseless finding that CSI's infringement began outside the effective policy period. Such dates are completely irrelevant to when CSI allegedly began its infringement activities. Instead, these dates relate to the underlying Plaintiff's activities.

Furthermore, the Second Claim of the Underlying Complaint alleges infringement of Too Marker's "Cap-End Registration," U.S. Registration No. 4,113,852. (PX-20 at ¶¶13, 30-35). That trademark registration issued on March 20, 2012 (PX-39). Too Marker could not have sued CSI for infringement of a registered trademark until after the registration issued on March 20, 2012, well after inception of the policy as Hahn admitted (Tr. 61:13-62:13). Thus, the prior publication exception could not possibly have applied to this underlying claim. *Bay Electric Supply, Inc. v. The Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 619-20 (S.D. Tex. 1999) (prior publication exclusion not applicable to infringement claim as trademark registration issued after policy inception). The prior publication policy cannot exclude coverage for conduct that was not actionable until after the policy period began. *Capitol Indemnity Corp. v. Elston Self-Service Wholesale Groceries, Inc.*, 559 F.3d 616, 620-21 (7th Cir. 2009) (prior publication exclusion not apply where sales of counterfeit cigarettes did not occur until after policy inception). If Selective was required to defend one of the claims, it must defend against all of them. *United States Fid. & Guar. Co*, 144 Ill.2d at 73-74. ("Where several theories of recovery are alleged, the insurer's duty to defend is triggered "even if only one such theory is within the potential of the policy coverage.") Hahn's denial of coverage based on the prior publication exclusion was without factual or legal basis, and was vexatious and unreasonable.

C.   The Remaining Grounds In The June 22, 2012 Letter Were Also Baseless

Hahn's letter also denies coverage because the Oregon Complaint did not allege "bodily injury" and "property damage," which are plainly irrelevant to trade dress infringement. Hahn

21

admitted as much (Tr. 64:7-19). Inclusion of such meaningless grounds was completely baseless and contrary to Selective's own Claims Manual (Tr. 64:20-65:22; PX-302).

The denial on the ground that John Gragg was not a covered officer were also baseless as it is directly contrary to the plain allegations of ¶17 of the Oregon Complaint: "Defendant Gragg, as president of defendant Creation Supply, directed and authorized the import and sale of the MEPXY line of markers by defendant Creation Supply" (PX-20). This ground of denial is also directly contrary to ¶15 of Selective's own allegation in its declaratory judgment complaint in the Circuit Court (PX-236), which states that: "[t]he underlying complaint alleges that GRAGG, as president of CREATION SUPPLY, directed and authorized the import and sale of the MEPXY markers," and which specifically references ¶17 of the Oregon Complaint.

The June 22 letter also asserts that CSI did not provide Selective timely notice of its claim. CSI was served on May 26, 2012, on Saturday of Memorial Day weekend. CSI notified Selective on June 13, 2012, eighteen days later. As a matter of law, eighteen days is not late notice. Accordingly, denial of coverage on these grounds was baseless, and Hahn's reliance on them was vexatious and unreasonable.

As shown above, the June 22, 2012 letter did not contain a single factually or legally supported ground for denial of coverage. Such denial was, therefore, vexatious and unreasonable.

## VI.  SELECTIVE'S FILING OF A BASELESS DECLARATORY JUDGMENT SUIT WAS VEXATIOUS AND UNREASONABLE

After the June 14, 2012 email to Mr. Richmond, Hahn instructed (Tr. 72:19-24) Selective's outside counsel to file a declaratory judgment action (PX-236) that included grounds directly contradicting Hahn's finding that advertising injury was likely pled, and a host of other irrelevant grounds. As shown above, all of the purported grounds that Selective advanced for

22

initially denying CSI's claim were completely baseless. Because Selective had no factual or legal basis to deny CSI's claim as of June 22, 2012, it also had no factual or legal basis to file the declaratory judgment action in the Circuit Court of Cook County ten days later on July 2, 2012, on essentially the same grounds, and additional irrelevant and baseless grounds. Instead, Selective filed suit solely to force CSI to litigate for what it was rightfully due – a defense. Such conduct is vexatious and unreasonable. *Millers Mutual*, 675 N.E.2d at 1043-4 (filing declaratory judgment action for delay in paying insured constituted vexatious and unreasonable delay).

Hahn's purported excuse that he gave the matter to coverage counsel does not obviate his purpose in filing the baseless suit, nor excuse Selective's delay. Chasing new bogus theories in a declaratory judgment action to try to coerce CSI not to fight for its policy rights merely generated additional delay. Selective's filing a baseless declaratory judgment action was vexatious and unreasonable.

## VII. HAHN'S CONFLICT OF INTEREST NEEDLESSLY PERPETUATING THIS DISPUTE IS THE MOTIVATION FOR HIS VEXATIOUS AND UNREASONABLE CONDUCT

As shown in CSI's Motion to Disqualify David Hahn (Dkt. No. 217), Hahn has a plain conflict of interest in this case. Though Selective's attorney, Hahn has not acted in Selective's interest, but in his own, trying to justify his own actions using Selective's resources. He continues to act in his own self-preservative interest in a desperate hope against hope, as he has through every stage of this dispute, that his actions towards CSI will be acquitted. Such desperation has fueled this dispute from the outset, and continues to drive Hahn's actions against CSI.

Hahn's conduct has been enabled by a complete lack of supervision or any apparent meaningful management structure at Selective. Hahn has been left on his own to do as he

pleases. Neither Hahn's supervisors nor Selective management have done anything to prevent or correct the problem Hahn has created. Both Mr. Richmond (see, e.g., Tr. 219:25-290:15; 291:24-292:23; 293:1-294:14) and Mr. Cherrie (Tr. 363:2-12) testified that they did nothing to rein in Hahn, instead relying on his supposed "expertise." They essentially let Hahn act, in violation of Selective's own policies, including as both adjuster for CSI's claim and to control the litigation in which his actions were the center point (PX-302 at 0685, ¶2), contrary to Selective's interests. Hahn even appointed Cherrie, his former supervisor, as Selective's corporate representative at trial (Tr. 325:8-19). It is doubtful Hahn had such actual authority.

Over the past six years, Hahn has been the only Selective employee who has participated in this dispute and in the handling of CSI's claim. Hahn signed all interrogatory responses on behalf of Selective, as Selective's Complex Claims Counsel, in both the Illinois courts and in this action (see, e.g., PX-138-147). Hahn has been the only Selective employee present at all three failed formal settlement attempts in both the Illinois courts and here.

Hahn has purposefully dragged out this proceeding in to avoid having to properly inform Selective's upper management of his botched handling of CSI's claim, and of his miscalculation that he could grind CSI out of existence with expensive litigation. Such complete lack of oversight enabled and intensified the vexatious and unreasonable nature of Hahn's, and thereby Selective's actions against CSI.

## VIII. <u>CONCLUSION</u>

As shown above, Selective, through its Complex Claims Counsel David Hahn, has at every turn, thwarted CSI's right to a defense by denying CSI's claim on baseless grounds, by filing a baseless declaratory judgment action against CSI, and by withholding payment of undisputed fees and expenses to force either into submission or out of existence. Each of these

acts separately could give rise on their own to vexatious and unreasonable conduct violative of Section 155. Hahn's collective actions taken in totality amply demonstrate the contempt he had for the insured, CSI. The Court should, therefore, find that Selective has violated Section 155, and set a date for a hearing with respect to CSI's award for such violation, along with requiring Selective to report any vexatious and unreasonable delay findings to the Director of the Illinois Department of Insurance within 30 days as set forth by Ill. Admin. Code, Title 50, §919.80(a).

DATED: August 23, 2018                                       Respectfully submitted by,


                                                            /s/Edward L. Bishop
                                                            Edward L. Bishop
                                                            ebishop@bishoppatents.com
                                                            Nicholas S. Lee
                                                            nlee@bishoppatents.com
                                                            Connor P. Singleton
                                                            csingleton@bdl-iplaw.com
                                                            James J. Jagoda
                                                            jjagoda@bdl-iplaw.com
                                                            BISHOP DIEHL & LEE, LTD.
                                                            1475 East Woodfield Road Suite 800
                                                            Schaumburg, IL 60173
                                                            Phone: (847) 969-9123
                                                            Fax: (847) 969-9124

                                                            *Attorneys for Plaintiff Creation Supply, Inc.*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this August 23, 2018. Any other counsel of record will be served by electronic mail and/or first class mail.

                                                            /s/Edward L. Bishop
                                                            Edward L. Bishop


25