**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CREATION SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:14-cv-08856 |
| | ) | |
| v. | ) | Honorable Charles P. Kocoras |
| | ) | |
| SELECTIVE INSURANCE COMPANY | ) | Magistrate Judge:  Young B. Kim |
| OF THE SOUTHEAST, | ) | |
| | ) | |
| Defendant. | ) | |

## SELECTIVE'S OPPOSITION TO CSI'S FEE PETITION

Creation Supply Inc. ("CSI") has submitted a fee petition seeking **$2,846,049.34** in legal fees allegedly arising from a case in which it was awarded $195,070 in defense costs from Selective Insurance Company of the Southeast ("Selective"). The fee petition, submitted under 215 ILCS 5/155 ("Section 155"), is grossly inflated, unconscionable, and legally improper. Selective objects to CSI's Fee Petition for the reasons set forth below.

**I.      INTRODUCTION**

Section 155, by its plain language, limits recovery of fees to actions "wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim." This statutory language should not be stretched beyond its clearly stated terms. *Neiman v. Economy Preferred Insurance Co.*, 357 Ill. App.3d 786, 793 (1st Dist. 2005) (application of Section 155 is limited to the situations specified by the statute). Section 155 grants Courts the discretion to award reasonable attorneys' fees incurred to secure

1

a ruling on the existence or amount of coverage. However, Section 155 does not authorize the recovery of fees incurred for other purposes. *Neiman*, 357 Ill. App.3d at 797; *Marcheschi v. Illinois Farmers Ins. Co.*, 298 Ill. App. 3d 306, 315 (1st Dist. 1998) (affirming trial court's denial of attorneys' fees incurred in prosecuting the Section 155 action but granting limited recovery for attorneys' fees in underlying arbitration). Here, the lion's share of fees sought by CSI were not incurred in an effort to obtain coverage.

CSI's fee petition is larded with items which do not fall within the ambit of fees permitted under Section 155, or have either already been rejected by other courts and should be barred by collateral estoppel. Among other examples, legally unrecoverable items in the fee petition include: fees allegedly incurred in relation to Selective's appeal to the Seventh Circuit; CSI's voluntary and unnecessary reporting of the Court's Section 155 ruling to the Illinois Department of Insurance; and its harassment of David Hahn individually by purposefully trying to create a conflict of interest between him and his employer. By far, the most astounding aspect of CSI's fee petition is its request for over $2 million in fees allegedly incurred in the action filed by CSI in this Court, *CSI v. Selective*, case no. 14-cv-8556 (the "Section 155 action"). In addition to the billing abuses outlined in the Expert Witness Report prepared by Rick Hammond of HeplerBroom, LLC (Exhibit 1 hereto), the fees incurred in this action are simply not recoverable under Section 155. These portions of the fee petition should be rejected.

CSI did incur fees within the insurance coverage action before Judge Flynn in the Circuit Court of Cook County and associated appeals. While these fees are the type of fees that may be recoverable under Section 155, they – like all of the fees claimed by CSI – are unreasonable and should be carefully scrutinized.

## II.   ONLY ATTORNEYS' FEES AND COSTS RELATED TO ESTABLISHING COVERAGE MAY BE RECOVERED UNDER SECTION 155

The types of fees awardable under Section 155 are defined by the statute. Section 155 provides, in relevant part:

Sec. 155. Attorney fees.

(1)   In any action by or against a company **wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim**, and it appears to the court that **such** action or delay is vexatious and unreasonable, the court **may allow as part of the taxable costs in the action reasonable attorney fees**, other costs, plus an amount not to exceed any one of the following amounts:

(a)   60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)   $60,000;

(c)   the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(Emphasis added).

However, while fees associated with establishing coverage in the limited circumstances described in the statute may be recoverable as part of the taxable costs in the action that actually established coverage, any such award is a matter of the Court's discretion. "It is important to note that the court has discretion whether or not to assess the above attorney fees, costs and the additional amount provided for, as the statute contains permissive rather than mandatory language." *Marcheschi*, 298 Ill. App. 3d at 315. Thus, a finding of Section 155 liability does not automatically entitle a prevailing policyholder to an award of attorneys' fees.

3

Additionally, fee shifting statutes like Section 155 must be strictly construed. *Saskill v. 4-B Acceptance*, 139 Ill. App. 3d 143, 144 (1st Dist. 1985); *see also Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) *citing Morris v. Auto-Owners Ins. Co.*, 239 Ill. App. 3d 500, 509 (4th Dist. 1993). On its face, Section 155 authorizes the recovery of attorneys' fees and costs in only three circumstances:

(1)  in an action … wherein there is in issue the liability of a company on a policy or policies of insurance;
(2)  in an action … wherein there is in issue … the amount of loss payable [under a policy] of insurance; and
(3)  in an action … wherein there is in issue the liability of a Company … for an unreasonable delay in settling a claim.

Only in these specifically listed situations may a court award Section 155 fees. *Neiman*, 357 Ill. App.3d at 797.

CSI's fee petition requests payment of every conceivable fee and expense allegedly incurred in 16 different categories, addressing a surprisingly expansive range of matters. Of these, the broadest possible scope of recoverable fees would be those incurred in 3 of the 16 matters: the Illinois DJ (L0006) and the related Illinois state appeals (L00010 and L00012). See *Neiman*, 357 Ill. App.3d at 794. As shown below, however, even those specific fees should be reduced because they are excessive and/or inappropriate.

Generally, the Illinois coverage case progressed as follows: First, the state court addressed the issue whether there was a duty to defend at all. Judge Flynn held that there was such a duty and this ruling was affirmed on appeal. Second, the scope of the duty to defend was addressed. This involved issues of: (1) whether Selective's defense duty included CSI's pursuit of a third party claim against Too Marker by CSI in the

4

Oregon case; (2) whether the defense duty included CSI's prosecution of claims against Alpha in the Illinois courts (the "Illinois Alpha fees"); and (3) whether the defense duty included payment of fees incurred by CSI in the Oregon case after the claims against CSI were dismissed (the "post-dismissal fees").

In May 2016, Judge Flynn ruled that Selective **owed no duty** to pay fees incurred in the Illinois Alpha case. CSI chose not to appeal that ruling. In June 2017, the Illinois Court of Appeals ruled that Selective's "defense" obligation did <u>not</u> require it to pay fees that were incurred after August 2013 when the claims against CSI in the Oregon case were dismissed. Following the July 2017 appellate ruling, and in light of its prior payment to CSI of $178,000, Selective owed CSI only $17,070.27. CSI seeks all the fees that it allegedly incurred while pursuing the Illinois Alpha fees and the post-dismissal fees, even though it was unsuccessful in those attempts. [1]

## III. CSI'S FEES INCURRED IN THIS LAWSUIT ARE NOT RECOVERABLE UNDER THE TERMS OF SECTION 155

Section 155 is limited in scope and therefore limits the scope of fees that may be awarded in the event of liability under the statute. The three well-defined areas are set forth above. [2] The statutory authorization for a fee award under Section 155 cannot be extended to the $2 million in fees allegedly incurred by CSI in prosecuting this lawsuit, *CSI v. Selective*, case no. 14-cv-8856 (the "Section 155 action").

---

[1] CSI's petition seeks recovery of amounts it *unsuccessfully* sought as defense costs in the underlying case. It again seeks recovery from Selective for the Illinois Alpha fees (L0004 and L0008, a combined total of $76,512.77) and for the "post-dismissal" Oregon fees (L0002, totaling $191,411). (CSI Petition at pp. 2, 10-11). Those fees are not recoverable due to collateral estoppel. *See* pp. 10-13, *infra.*

[2] The third category, "unreasonable delay in settling a claim," does not apply here. In this context, "claim" means the underlying liability claim asserted against CSI in the Oregon case. CSI did not assert that Selective unreasonably delayed the settlement of that case. The claims against CSI in the Oregon case were dismissed in August 2013, long before any court ruled that Selective owed a defense for that case. In addition, the liability established by this Court's December 20, 2018 order was not based on any delay in settlement of a claim.

**A.      The Present Section 155 Case Does Not Fit Within the Parameters for Section 155 Recovery.**

Section 155 permits recovery of attorneys' fees incurred in establishing the existence of coverage under an insurance policy. It does not authorize a complete departure from the American Rule wherein a policyholder can generate fees in a standalone Section 155 action and then recover those same fees as damages.

Indeed, the plain language of Section 155 does not treat attorneys' fees as damages within the Section 155 case. Rather, Section 155 describes attorneys' fees as "part of the taxable costs of ***the action***" (emphasis supplied). By "the action," Section 155 refers to the case where coverage is established – here, the Illinois DJ action before Judge Flynn.[3] *Neiman*, 357 Ill. App. 3d at 794. *See also UNR Industries, Inc. v. Continental Ins. Co.*, 607 F. Supp. 855, 866 (N.D. Ill. 1984); *Cramer v. Insurance Exchange Agency,* 174 Ill.2d 513, 521 (1996); *McGee v. State Farm Fire and Cas. Co.*, 315 Ill. App. 3d 673, 680-81 (2d Dist. 2000) (Section 155 provides a remedy to an insured that encounters difficulty recovering a policy benefit from an insurer).

*Cramer* is one of the few Illinois Supreme Court opinions regarding Section 155. *Cramer* explains that Section 155 "presupposes an action on the policy…. The statute simply provides an extracontractual remedy to an action on a policy." *Cramer*, 174 Ill.2d at 523. Thus, *Cramer* requires any recovery under Section 155 to arise out of an action by a policyholder to enforce the terms of the policy. Accordingly, Section 155 does not authorize the recovery of fees incurred in the present action because it does not involve a determination of Selective's liability under an insurance policy. In essence, Section 155 was enacted to assist policyholders when insurance companies acted

---

[3]  CSI asserted a Section 155 claim in the Illinois DJ, but Judge Flynn dismissed that claim in 2013. CSI never again sought to assert Section 155 in the Illinois court proceedings.

unreasonably or vexatiously in the payment of obligations under the policy. It was not enacted to allow attorneys to generate, and then recover, fees in the manner done here. CSI cites no Illinois case stating otherwise.

Accordingly, CSI's Section 155 fee recovery should be limited to fees incurred in the state court coverage case. *See, e.g., Marcheschi*, 298 Ill. App. 3d at 315 (affirming trial court's denial of attorneys' fees incurred in prosecuting the Section 155 action but granting limited recovery for attorneys' fees in underlying arbitration). CSI asserts that it incurred $515,764.27 in legal fees and costs in the state coverage case. This is the combined amount claimed by CSI for L0006, L0010, and L0012. Although this amount is itself excessive, it represents the maximum extent of what could be recovered here.

In contrast, the Section 155 action was never a claim for coverage under the Selective policy. This Court was never asked to determine the existence, or extent, of coverage owed to CSI by Selective. Those issues were decided by the Illinois state court actions and the associated appeals. Indeed, when Selective initially moved to dismiss the Section 155 action due to possible overlap with the substance of the state court proceedings addressing coverage, CSI insisted that there would be no such overlap on those coverage issues, (ECF Doc. #21.) The existence of coverage (duty to defend), the scope of that "defense" duty, and the amount owed by Selective for that defense, were determined exclusively by the Illinois courts and were never in issue in the Section 155 action.

This matters because, as shown above, Section 155 limits its scope to efforts to establish coverage or to establish the amount of coverage owed. The present Section 155 case has never been about recovering insurance coverage. None of the fees

7

sought here were incurred in determining the existence or extent of coverage or loss under the policy. These fees were generated solely for the purpose of getting Selective to pay them: they were "fees for fees." This is not the purpose of Section 155, nor does it fall within the scope of fees permitted by the clear language of the statute.

Moreover, CSI has asserted that the present case is different from the state coverage case, thus recognizing that this case does not fit within the parameters for Section 155 recovery. *See* ECF Doc. # 204 at p. 5 ("Here, the causes of action in this action – whether Selective violated Section 155 of the Illinois Insurance Code – and that decided by the Illinois Courts – a declaration that Selective owed CSI a duty to defend under their insurance contract – are completely different."). CSI's own complaint in the Section 155 action states that it seeks to recover the attorneys' fees it incurred in defending the underlying lawsuit and in pursuing payment from Selective due to Selective's failure to comply with the terms of the policy. (ECF Doc. #1 at ¶¶ 83-84).

The very approach taken by CSI in this case was rejected by the Illinois Appellate court in *Neiman.* There, the insured had filed a Section 155 action separate from the coverage proceeding. The insurer won summary judgment on the Section 155 claim because coverage had already been determined in the separate coverage case. The ambit of Section 155 was thus limited to efforts to obtain coverage, to the exclusion of other litigation between the parties – particularly the separately filed Section 155 claim. *Neiman* specifically recognized that fees generated in a stand-alone Section 155 lawsuit are not incurred to establish coverage. Therefore, those fees are simply outside of the scope of the fees recoverable under Section 155.

Accordingly, a plain reading of Section 155, Illinois law interpreting Section 155, and CSI's conduct in this lawsuit, all strongly support denial of CSI's request for attorneys' fees or costs incurred in prosecuting this Section 155 action.

**B. The Consequential Damages Claim in the Present Case Does Not Fit Within The Parameters For Section 155 Recovery.**

CSI's consequential damages claim (Count II of its complaint in this case) does not qualify as either an issue of liability under the Selective policy or a "loss payable" under that policy. Instead, those damages would be to compensate CSI for non-policy benefits as damages for the breach of contract – i.e., the "damages" resulting from the failure to provide a defense. (See ECF Doc. #21, at p.8). CSI's contract claim does not seek determination or payment of any amount owed under the terms of the policy or "payable thereunder" as required. Thus the consequential damages claim is beyond Section 155's scope, and CSI cannot recover its fees incurred in prosecuting that claim.[4] *See Neiman*, 357 Ill. App. 3d at 794.[5]

Further, CSI's breach of contract claim is entirely separate from CSI's statutory claim for "vexatious and unreasonable" conduct under Section 155. CSI sought, and this Court granted, summary judgment to CSI on its breach of contract claim (ECF Doc. #146) without any finding of vexatious and unreasonable conduct. Neither CSI, nor the Court, addressed "vexatious and unreasonable" as an element necessary to that claim. As Selective's liability for breach of contract does not involve a finding of vexatious and

---

[4] Fees for the Breach of Contract claim are an ***unallocated*** portion of the $2 million in fees billed by BDL in the Section 155 action. Selective suggests a 50% reduction in the amount claimed for the Section 155 claim, to account for that fact. The remaining amount after this 50% reduction should be subject to the further reductions discussed elsewhere in this memorandum.

[5] Also, even assuming for argument's sake that fees incurred regarding the consequential damages claim could be a subject of Section 155 recovery, that trial has not yet occurred and CSI has not established that Selective is in fact liable for any alleged damages under CSI's separate Breach of Contract claim.

9

unreasonable conduct, that claim is not an action for which attorneys' fees could be awarded under Section 155. See *Cramer*, 174 Ill.2d at 523 (Section 155 is an **extracontractual** remedy for vexatious and unreasonable conduct).

## IV. CSI IMPROPERLY SEEKS ADDITIONAL CATEGORIES OF FEES THAT ARE UNRECOVERABLE UNDER SECTION 155

### A. Categories of Fees and Expenses CSI Previously Sought and Were Denied And/or Which CSI Waived

#### 1. Fees/Expenses Related to Matters Outside Selective's Duty to Defend (L0002, L0004, L0008) ($267,924.12)

CSI claims that it is entitled to $267,924.12 in legal fees and expenses that it incurred for matters that have been judicially determined to be unrecoverable. These involve BDL billing categories L0002, L0004, and L0008. CSI provides no argument as to why it should be entitled to these amounts. Nor does CSI inform the Court that it previously requested – and was denied – these very same attorneys' fees. The mere fact that CSI pursues a different cause of action has no bearing on the collateral estoppel effect of the prior state court rulings limiting the scope of coverage. *Park v. Bd. of Trustees of Univ. of Illinois*, 754 F. App'x 437, 439 (7th Cir. 2018), *reh'g denied* (Dec. 11, 2018) ("Issue preclusion [collateral estoppel] bars successive litigation of an issue of fact or law actually litigated and resolved in a valid determination essential to the prior judgment, even if the issue recurs in the context of a different claim.") (internal citations omitted).

#### a. Illinois Alpha Fees and Expenses ($76,512.77)

CSI claims $62,198.27 for fees and expenses incurred in the case of *Creation Supply, Inc. v. Alpha Art Materials, Co., Ltd.*, 12-cv-05456 (N.D. Ill.), also called the "Illinois Alpha" action (L0004). CSI seeks an additional $14,314.50 in fees and expenses

somehow incurred in the Illinois Alpha Action after it was transferred to Oregon (L0008). In the Illinois DJ, CSI twice asked for and was denied these same fees. Judge Flynn's June 19, 2015 Order rejected CSI's request for the Illinois Alpha Action fees incurred before the transfer to Oregon. (ECF Doc. # 118-16 at pp. 7-8). Judge Flynn's May 23, 2016 Order reconfirmed that decision and denied recovery of the post transfer Illinois Alpha fees. (DX 12 at p. 5). CSI chose not to appeal either ruling, making them final decisions in Selective's favor. Now, CSI is requesting fees that were twice ruled to be outside of Selective's duty to defend. These claims are barred by collateral estoppel. *Bd. of Trustees of Univ. of Illinois*, 754 F. App'x at 437. They are also contrary to the law of judgments. *See Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303 (7th Cir. 1995).

Moreover, Selective's refusal to provide CSI with a defense in the Illinois Alpha Action was not, as a matter of law, unreasonable or vexatious. Judge Flynn's final order held that the amounts sought as "defense" for that action were not owed. Because Selective's coverage decision regarding the Illinois Alpha Action was correct, it should not be found to be liable under Section 155 for that portion of the fees sought by CSI. *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017) (attorneys' fees under Section 155 are unavailable when an insurer's coverage position prevails); *Scottsdale Indem. Co. v. Village of Crestwood*, 784 F. Supp. 2d 988, 998 (N.D.Ill. 2011).

### b. Oregon Action Fees Incurred After August 19, 2013 ($191,411.35)

Additionally, CSI claims $191,411.35 for fees it allegedly incurred after the claims against it in the Oregon lawsuit were dismissed on August 19, 2013 (L0002). The Illinois Court of Appeals ruled that Selective's duty to defend the underlying Oregon Action was

extinguished as of that date. *Selective Ins. Co. of the Southeast v. Creation Supply, Inc.*, 2017 IL App (1st) 161899-U, ¶ 58 ("CSI's third-party claims against Alpha, which were premised upon the allegations of the underlying complaint that initially triggered the duty to defend, could no longer be afforded coverage after the underlying lawsuit settled and was dismissed."). Further, on October 2, 2017, the Circuit Court of Cook County ordered that the "total amount CSI is entitled to in view of the Appellate Court's June 30, 2017 Order is $195,070.27" and that "this order is final of all motions before this Court." (DX 181). This Order liquidated the amount Selective owed CSI for defense. It is thus the final word on the scope of coverage Selective owed to CSI. CSI took no appeal from this order, making it final and binding between the parties, and is entitled to collateral estoppel effect. Again, as Selective owed no coverage to CSI after August 19, 2013, it cannot be held to have behaved unreasonably and vexatiously toward CSI for not paying fees incurred after that date. *See P.Q. Corp., 860 F.3d at 1038; Village of Crestwood*, 784 F. Supp. 2d at 998 (Section 155 unavailable where insurer's coverage decision was ruled to be correct). Accordingly, CSI should not recover its fees and costs incurred in the underlying Oregon lawsuit after August 19, 2013.

### 2. Fees/Expenses Related to Underlying Oregon Action (General, W0003, L0007, L0009) ($4,027.00)

CSI claims $4,027.00 in fees and expenses for various matters it claims were incurred in defending the underlying Oregon Action. It does not explain why it is entitled to these fees and expenses under Section 155. Nor do any of these fees appear to relate to establishing the existence of insurance coverage. For example, CSI simply states that matter W0003 "relates to the Mepxy Memorandum of Understanding that relates to the Illinois Alpha Action that was consolidated with the Oregon Action." As

12

explained above, the Illinois Alpha Action was judicially determined to be outside of the scope of Selective's duty to CSI. If matter W0003 "relates to the Illinois Alpha Action" then it, too, cannot be the basis for Section 155 liability and those fees are barred by collateral estoppel.

The same is true for matter L0009. It allegedly relates to the deposition of Byung H. Whang. Selective is unaware of any deposition of Mr. Whang. There is no reason to believe that it has anything to do with insurance coverage. His deposition was never noticed in the Illinois coverage case. In any event, CSI states that this deposition was related to the Illinois Alpha Action. As established, that takes it outside of Selective's coverage and thus beyond any Section 155 fee award. Additionally, CSI states that Mr. Whang's deposition took place on January 21, 2014. Thus, even if CSI were to now claim that Mr. Whang's deposition took place within the context of the underlying Oregon lawsuit, Selective's duty to defend was judicially determined to end months prior to that deposition. Selective did not violate Section 155 with respect to the deposition of Mr. Whang. Accordingly, there is no legal basis for recovery of those fees.

CSI also seeks fees and costs incurred with respect to the deposition of Daniel Kim (L0007). Further, it seeks fees billed to a "General" billing number allegedly related to the underlying Oregon Action. This makes these matters part of the alleged defense expenses in the underlying liability lawsuit against CSI. As established, Judge Flynn ruled on all claims for defense fees and costs incurred in that underlying case. Thus, Judge Flynn ruled on October 2, 2017 that all amounts owed by Selective to CSI with respect to the defense of the underlying Oregon Action had been paid. Yet, Selective now attempts to recover more for that defense.

13

Furthermore, Judge Flynn specifically addressed BDL's billing with respect to the Daniel Kim deposition in his June 19, 2015 Order. (ECF Doc. # 118-16 at p. 13). Clearly, Judge Flynn included the amounts BDL billed for the Kim deposition in his ruling of what was recoverable. This was paid by Selective. CSI's efforts to obtain a double recovery for its work on the Kim deposition are inappropriate and should be denied.

### 3. Fees/Expenses Related to CSI's Complaint Against Too Marker In Illinois (L0005) ($21,142.92)

CSI claims $21,142.92 in fees and expenses related to the Illinois Too Marker lawsuit. Specifically, CSI states these fees were incurred in providing a defense for John Gragg, CSI's president. All matters related to the scope of Selective's coverage obligations with respect to the underlying Oregon lawsuit were resolved and fully paid in the state court case. Accordingly, there should be no basis for a Section 155 recovery and there is no additional recovery available here.

### B. CSI's Expenses and Fees Unrelated to Insurance Coverage Incurred to Harass Selective and David Hahn, Are Not Recoverable

### 1. Fees/Expenses Related to CSI's Unnecessary Reporting of the Court's Judgment to the Illinois Department of Insurance ($3,123.75)

BDL billed $3,123.75 for reporting this Court's Section 155 ruling[6] to the Illinois Department of Insurance (L00013). Section 155 allows the discretionary award of attorneys' fees incurred by an insured in establishing insurance coverage where the coverage denial was unreasonable and vexatious. There is, however, no provision in

---

[6] Selective assumes that this is the content of CSI's communications with the Illinois Department of Insurance, but Selective has not seen any such communication. Based on a review of BDL's invoices, there may have been multiple complaints to the Illinois Department of Insurance and, potentially, an effort to get Selective's license revoked. Regardless, none of this work pertains to establishing coverage.

Section 155 regarding reporting to the Insurance Department, much less reimbursement for fees incurred in such reporting. Thus, there is no nexus between BDL's reporting and the establishment of coverage in the Illinois DJ.[7]

### 2. Fees/Expenses Related to CSI's Harassment of David Hahn with Repeated Motions Seeking to Invent Conflict between Hahn and His Employer, Selective ($3,315.00)

CSI seeks $3,315.00 specifically incurred in an effort to create a conflict of interest between Selective employee David Hahn and his employer, Selective. CSI previously had sought to "disqualify" Mr. Hahn as an attorney in this lawsuit – even though Mr. Hahn was never an attorney of record for Selective in this case. CSI moved to disqualify him anyway (ECF Doc. # 217) and this Court properly denied that motion. CSI's motion conveyed a palpable, personal dislike for Mr. Hahn. After that baseless attempt to assert a conflict between Mr. Hahn and Selective, CSI tried again to create a conflict by attempting to exclude Mr. Hahn from settlement discussions and threatening to pursue liability against him personally, even though he was never a party to the litigation.

Now, CSI claims that Selective should reimburse its counsel for these efforts. Clearly, CSI's efforts in this regard were not designed to establish coverage. Coverage was established and its scope defined in the state court well before these personal attacks began. No good faith argument is made by CSI in support of this asserted recovery. No cases are cited in support. Nor does Section 155 contemplate such fees as part of the reimbursement of costs associated with establishing coverage.

---

[7] An insurer can have a responsibility to report certain events to the Illinois Department of Insurance under specifically defined circumstances. Neither CSI nor its counsel was under any such reporting obligation at any time. See 50 IL ADC 919.80.

Moreover, as noted, CSI's motion to disqualify was denied. This establishes that Selective's position on the motion was made in good faith, not to mention meritorious. Under this circumstance, there is no legally cognizable basis for CSI to recover its fees and costs of the motion, whether under Section 155 or otherwise. See e.g., Fed. R. Civ. P. 11. This request should be rejected.

## V.    BDL'S FEES ARE NOT REASONABLE

An award of fees under Section 155 is not mandatory. It is subject to the Court's discretion. Thus, the Court will decide the amount – if any – of attorneys' fees that it is appropriate to award after examining the totality of the circumstances. *See Estate of Price v. Universal Cas. Co.*, 334 Ill. App. 3d 1010, 1012-13 (1st Dist. 2002); *see also Marcheschi v. Illinois Farmers Ins. Co.*, 298 Ill. App. 3d 306, 314-15 (1st Dist. 1998). It is CSI's burden to prove that its claimed fees are reasonable. *Country Mut. Ins. Co. v. Hilltop View, LLC*, 2014 IL App (4th) 140007 at ¶ 34.

In order to determine reasonableness of attorneys' fees, courts examine the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430 at n.3 (1983) *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir. 1974). These factors

16

are also listed, with a few of them combined to reduce the number to eight, in the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106.

## A.     BDL's Fees Are Not Entitled to a Presumption of Reasonableness

CSI fails to prove that its fees are reasonable. Indeed, Selective's expert Rick Hammond explains that CSI's attorneys' fees are quite unreasonable. Rather than appropriately justify its fees, CSI glosses over the issue. In an effort to deter a detailed review of its legal invoices, CSI relies on *Taco Bell Corp. v. Continental Ins. Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004). But *Taco Bell* does not apply here. *Taco Bell* holds that where a client pays its attorneys' legal bills, the reasonableness of the fees charged can be assumed. Here, there is no evidence that CSI paid any of BDL's invoices. Indeed, the invoices submitted in support of CSI's fee petition show a final "Total Due" and unpaid of $2,882,617.77. There is no evidence of any payment by CSI throughout the entirety of BDL's work for CSI. Under these circumstances, the market forces that *Taco Bell* believed would naturally rein in unbridled billing, are absent here. Accordingly, BDL is not entitled to any presumption that its invoices are reasonable. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520-21 (7th Cir. 1999) (unpaid defense costs are "pie-in-sky numbers" when a litigant seeks to collect payment for fees that he would "never dream of paying" himself).

## B.     The Amount BDL Billed Is Excessive Relative to CSI's Recovery

In the Illinois DJ, Selective was ultimately ordered to pay CSI $195,070.27 in defense costs. That was the recoverable amount that the state court determined CSI had spent defending the underlying intellectual property lawsuit. The CSI fee petition asserts that, in order to recover that $195,000, CSI spent more than fourteen times that

amount: $2,846,049.24.[8] This gross disparity is facially unreasonable. *See, e.g.*, *Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2013) (striking majority of $426,000 fee petition for a case that resulted in a verdict of $2,000). Indeed, in the context of a similar Pennsylvania statute, the Third Circuit recently upheld a wholesale rejection of an "outrageously excessive" fee petition seeking $950,000 that was 7.6 times larger than the awarded damages. *Clemens v. New York Central Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3rd Cir. 2018).

Whether a party actually succeeds in its claim is a "crucial factor in determining the proper amount of an award of attorney's fees…." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (addressing how district courts should address claims for fees under fee-shifting statutes). Selective's second appeal to the Illinois Court of Appeals was overwhelmingly successful for Selective. In that appeal, Selective challenged CSI's claim for $214,147.61 that had been awarded by the Circuit Court. This $214,147.61 represented attorneys' fees CSI allegedly incurred prosecuting the Illinois Alpha lawsuit and for prosecuting claims in the Oregon *Too Marker* litigation after those claims were dismissed on August 19, 2013. The Court of Appeals found that Selective was not responsible for those post-dismissal attorneys' fees . This resulted in CSI's net award being reduced from $214,147.61 (based on Judge Flynn's May 2016 ruling) to $17,070.27.[9] CSI is not entitled to a Section 155 recovery of attorneys' fees incurred in fighting a losing battle. *PQ Corp. v. Lexington*, 860 F.3d at 1038. Accordingly, this Court

---

[8] CSI claims to have incurred $515,764.27 in legal fees related to the Illinois DJ and the two related appeals alone. This is the total claimed by CSI in its fee petition for L0006, L0010, and L0012. Even this amount is substantially out of proportion to the amount recovered from Selective pursuant to the various state court rulings.

[9] Selective had earlier paid $178,000. That amount, added to $17,070.27 became the final award to CSI for all owed defense expense.

18

should not award CSI any of its claimed $53,408.75 in fees allegedly incurred in the Second Appeal (L0012). Alternatively, the fees sought by CSI should be reduced commensurate with CSI's lack of success on the Second Appeal. CSI was ultimately awarded 8% of the amount at issue on that appeal. Applying that same percentage here would result in a fee award of $4,272.70 for work on that appeal.

### C.      BDL's Billing Practices Are Unreasonable

BDL's invoices are rife with block billing, overbilling, redundant work by multiple senior attorneys, and administrative tasks being performed by senior attorneys. Such billing practices are unreasonable. In order to account for egregious nature of these billing practices, Selective requests that the Court reduce by 50% any fees awarded to CSI. This reduction should apply even within those limited categories for which Section 155 would permit recovery. Reducing a fee award to account for improper billing practices is within the Court's discretion. *See, e.g., HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 388 (7th Cir. 2011) (significant reduction in fees upheld based on evidence of overbilling by high-level partners and duplicative entries); *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 558-59 (7th Cir. 1999) (upholding reduction of fee award by 50%). In fact, fee petitions involving billing practices similar to those employed here have been rejected entirely. *Clemens v. New York Central Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3rd Cir. 2018).

Selective's expert witness, Rick Hammond, has thoroughly analyzed BDL's invoices. *See* Hammond Report, **Exhibit 1**. He concludes that a "substantial amount of the time expended on legal work identified in Creation's Petition for Fees was not

19

reasonably expended or necessary." Among the examples Hammond cites are the following:

1. BDL allegedly spent 28.25 hours ($9,681.25) researching how to recover the $509 premium paid by CSI to Selective;

2. BDL allegedly spent 81.25 hours ($33,828.75) preparing the First Amended Complaint (ECF Doc. # 16) in this case despite having already prepared a substantially identical Complaint only weeks before (ECF Doc. # 1);

3. BDL spent 138.8 hours ($56,615.00) preparing for and taking the first deposition of David Hahn which lasted 6 hours and 49 minutes;

4. BDL allegedly spent 47.6 hours ($18,938.75) to prepare a motion to compel (ECF Doc. #74) and attend the hearing on that motion; and

5. BDL allegedly spent 394.65 hours ($161,231.25) doing "trial preparation" during the 2017 stay in this case and a year before the July 2018 Section 155 trial.

These are but a few of the many examples of BDL's impermissible billing practices. Billing that is excessive, redundant, or unnecessary should not be rewarded. *See, e.g., Pouncy v. City of Chicago*, No. 15-cv-1840, 2017 WL 8205488, *9 (Dec. 11, 2017) (substantially reducing fee award for such billing). Block billing also is strongly discouraged. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012) (reducing fees awarded because court could not determine whether block billed entries were reasonable).

CSI also seeks expenses incurred by BDL for filing documents, traveling from Schaumburg to Chicago allegedly to attend hearings related to this lawsuit, and other similar charges. These should be routine overhead matters that are not recoverable under fee-shifting statutes. *See Johnson v. Thomas*, 342 Ill. App. 3d 382, 401-02 (1st Dist. 2003). As the Hammond Report demonstrates, BDL also routinely had senior attorneys perform ministerial tasks that could have been delegated to clerical personnel.

See Ex. 1 at pp. 32-24. Such charges are not recoverable. *Suntken v. Garza*, No. 08-C-4383, 2009 WL 10697648 (N.D. Ill. May 26, 2009). Selective requests that none of CSI's claimed attorneys' fees related to such routine or ministerial tasks be awarded, or if awarded at all, be heavily discounted.

Exhibit K to the fee petition contains over 300 pages of "expenses" for which CSI seeks reimbursement. There is no summary or tally of these expenses. The sole explanation is in Mr. Bishop's Declaration (ECF Doc. #292-1 at ¶8), stating that these expenses were "actually paid" and are already incorporated into the 16 billing categories for which CSI seeks reimbursement. These pages reveal dozens of entries for standard "overhead" expenses such as parking, meals, Federal Express, and Quick Delivery service. They contain legal fees that relate to the Illinois Alpha case (e.g., pp. 10402-10404), for which coverage was previously denied by the Illinois court. There are charges for Netflix (p. 10640), purchase of LogMeIn software (p.10630), "general merchandise" purchased at the airport (pp. 10399, 10418, 10539), and other random entries with no explanation whatever ($1338.42 on p.10528 and $275 at p.10544). CSI does not even try to justify these expenses. There is no total and no way to know where they were included in the $2.8 million matrix of fees. These expenses further undermine any possible finding of "reasonableness" of the fee petition submitted by CSI.

The Court stated its preference to assess the legal invoices supporting CSI's claim for attorneys' fees on a categorical basis, not line-by-line. Selective has adhered to that preference. However, the examples highlighted here and recorded in Hammond's Report indicate a pervasive practice of abusive and improper billing by BDL. Accordingly, if the Court is inclined to approve any portion of the CSI fee petition,

Selective requests that the Court conduct an evidentiary hearing into the reasonableness of BDL's alleged fees. This is especially warranted where, as here, the attorneys' fees have not been paid. *American Serv. Ins. Co. v. China Ocean Shipping Co. (Americas) Inc.*, 2014 IL App (1st) 121895, ¶ 25-29 (no presumption of reasonableness of attorneys' fees where they have not been paid, warranting an evidentiary hearing into reasonableness); *citing Trossman v. Phillipsborn*, 373 Ill. App. 3d 1020 (1st Dist. 2007).

In the event that such a hearing is ordered,  Selective requests that the Court grant it leave to conduct limited discovery in order to determine the full extent of BDL's impermissible billing. For example, on several occasions BDL attorneys billed an excessive amount of time per day. Hammond Report, Ex. 1 at p. 31-32. Further discovery into the daily bills of BDL attorneys may reveal further inappropriate billing practices relevant to CSI's fee petition.

## D. BDL's Billing Rates shown in the Fee Petition Are Unreasonable

Further warranting an evidentiary hearing, it appears that BDL increased its billing rates across the board by over 40% to coincide with its filing of this lawsuit.[10] CSI does not provide any explanation for this unheard-of jump in its rates. Indeed, the only factual support for the reasonableness of BDL's rates is Mr. Bishop's self-serving affidavit. This is insufficient. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999). Also, BDL's reliance on a summary of Intellectual Property lawyer rates, to demonstrate the reasonableness of rates charged in an insurance matter, is inappropriate.

---

[10] CSI blithely claims that BDL's rates are below those charged by Selective's counsel. This is not only unsupported, but untrue.

BDL's rate increase partially explains why BDL's average monthly invoice for this lawsuit is over 5 times greater than its average monthly invoice for the Illinois DJ. It also partially explains how BDL can claim to have billed more than $2 million to litigate this "fees-for-fees" case for 52 months while only billing $400,000 in fees for 65 months of legal work in the Illinois DJ. See Hammond Report, Ex. 1 at pp. 6-9.

Awarding CSI 50% of its requested fees for work performed to establish coverage in the Illinois DJ is the maximum award CSI should recover in this case. Nevertheless, to the extent the Court chooses to grant CSI a recovery based on a reasonable hourly rate multiplied by a certain number of hours charged, Selective requests that the Court reduce BDL's hourly rate by 35%. This is the average percentage increase of BDL's hourly fees after this lawsuit was initiated. This would lower BDL's partner and of counsel rates from $425/hour to a more reasonable $246.75/hour. BDL's associate billing rate would also be reduced from $325/hour to $211.25.

## VI. CSI IS NOT ENTITLED TO PREJUDGMENT INTEREST

Despite the lack of any award at this time, CSI requests prejudgment interest on the fees that it hopes to recover. This is not the first time CSI has requested prejudgment interest. CSI's claim for prejudgment Interest was rejected by Judge Flynn in his May 23, 2015 Order. Judge Flynn correctly ruled that the attorneys' fee amount did not meet the statutory requirement that the amount awarded be readily calculable. (ECF Doc. #118-16 at pp. 15-16). Additionally, because CSI has not paid any of the BDL invoices, paying prejudgment interest on the billed but unpaid amount would amount to a windfall to CSI.

23

In support of its argument for prejudgment interest, CSI cites *Smith v. Equitable Life Ass. Soc'y of the United States*, 67 F.3d 611, 618 (7th Cir. 1995). *Smith* is wholly distinguishable. It holds that prejudgment interest can be awarded on the delay of benefits payable under a policy of disability insurance. The key distinction is that a disability benefit amount is readily calculable. Here, as in the Illinois DJ, CSI asks for prejudgment interest on an amount that – even as of now – has not been determined. This is hardly reasonably calculable. Accordingly, CSI's request for prejudgment interest on any fee and/or cost award should be denied.

## VII.    **CONCLUSION**

For the reasons stated above and established in the Hammond Report, CSI should not be awarded the amount it seeks. Rather, that amount should be rejected or significantly reduced, for the reasons stated above.

Dated: April 11, 2019                    SELECTIVE INSURANCE COMPANY OF
                                                      THE SOUTHEAST


                                                      By: /s/Daniel G. Litchfield_____

                                                      Daniel G. Litchfield (6185695)
                                                      Hope G. Nightingale (6184864)
                                                      Michael P. Baniak (6299036)
                                                      LITCHFIELD CAVO LLP
                                                      303 West Madison Street, Suite 300
                                                      Chicago, IL 60606
                                                      Phone: (312) 781-6669 (Litchfield)
                                                      Phone: (312) 781-6614 (Nightingale)
                                                      Phone: (312) 781-6596 (Baniak)
                                                      Fax: (312) 781-6630
                                                      litchfield@litchfieldcavo.com
                                                      nightingale@litchfieldcavo.com
                                                      baniak@litchfieldcavo.com

Drew Louis Block (6288026)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
28411 Northwestern Highway
Suite 500
Southfield, MI 48034
Phone: 248-539-9901
Email: dblock@fosterswift.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2019, I electronically filed the foregoing Selective's Opposition to CSI's Fee Petition with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Edward L. Bishop<br>Connor Patrick Singleton<br>Jams Joseph Jagoda<br>Nicholas S. Lee<br>Bishop Diehl & Lee, Ltd.<br>1475 East Woodfield Road<br>Suite 800<br>Schaumburg, IL 60173<br>Phone: 847-969-9123<br>Email: ebishop@bdl-iplaw.com<br>Email: csingleton@bdl-iplaw.com<br>Email: jjagoda@bdl-iplaw.com<br>Email: nlee@bdl-iplaw.com<br>*Attorneys for Creation Supply, Inc.* | |

and I hereby certify that I have mailed by
United States Postal Service the document to the following non-CM/ECF participant:

NONE

By: /s/Daniel G. Litchfield_____

Daniel G. Litchfield (6185695)
Hope G. Nightingale (6184864)
Michael P. Baniak (6299036)
LITCHFIELD CAVO LLP
303 West Madison Street, Suite 300
Chicago, IL 60606
Phone: (312) 781-6669 (Litchfield)
Phone: (312) 781-6614 (Nightingale)
Phone: (312) 781-6596 (Baniak)
Fax: (312) 781-6630
litchfield@litchfieldcavo.com
nightingale@litchfieldcavo.com
baniak@litchfieldcavo.com

Drew Louis Block (6288026)
FOSTER, SWIFT, COLLINS & SMITH, P.C.
28411 Northwestern Highway
Suite 500
Southfield, MI 48034
Phone: 248-539-9901
Email: dblock@fosterswift.com