## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CREATION SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 08856 |
| | ) | |
| SELECTIVE INSURANCE COMPANY | ) | |
| OF THE SOUTHEAST, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Selective Insurance Company of the Southeast ("Selective") denied insurance coverage to Creation Supply Inc. ("CSI") when CSI was sued by Too Marker in federal court in Oregon for trade dress infringement. President of CSI, John Gragg, was also personally named as a defendant in the action. The Oregon suit and Selective's formal denial of coverage on June 22, 2012, spawned a series of lawsuits, appeals, and other court actions which persist to the present day.

This ruling on fees and costs under 215 ILCS 5/155 will be followed by a trial for consequential damages and fees, if any, sustained by CSI due to Selective's breach of its insurance contract with Selective. A bench trial was previously held by this Court which resulted in findings of fact and conclusions of law being made in favor of CSI

based on Section 155 conduct. Document 259 of the record in this case reflects those results.

In addition to the original complaint filed in Oregon by Too Marker, other actions relevant to Section 155 include Selective's Illinois Declaratory Judgment Complaint; CSI's Illinois case against Too Marker (brought because Gragg was named as a defendant in the Oregon action); CSI's Illinois suit against Alpha for implied warranty of noninfringement and indemnification; Selective's appeal of the Illinois Circuit Court judgment that Selective had a duty to defend; and CSI's Illinois defensive crossclaims against Alpha (Alpha being the supplier of the accused products in the Oregon action).

Completion of the appeals processes resulted in return of the matters to the trial courts for resolution of the remaining ancillary issues. The Illinois Circuit Court entered final judgment in its action on October 2, 2017. Attempts by this Court to settle all remaining issues between CSI and Selective have failed, necessitating a ruling at this time as to taxable costs, reasonable attorney's fees, and other statutory allowances.

As stated in *Neiman v. Economy Preferred Ins. Co.*, 357 Ill.App.3d 786, 829 N.E.2d 907 (1st Dist. 2005), Section 155's reach is described as follows:

> The statute begins by stating that it applies to those insurance cases where one of three issues remains undecided: the liability of the insurer, the amount owed under the policy, or whether a delay in settling a claim has been unreasonable.
>
> The language of this section is entirely plain to us. It directs that in a cause of action where there remains "in issue" either the liability of a company on an insurance policy or the amount of loss to be paid under a policy or

2

an unreasonable delay in "settling a claim," a court may award a monetary remedy to an insured, as described in subsection 1(a), (b) or (c).

Contrary to Selective's position, the instant action involved two claims, one for breach of the insurance contract and one under Section 155. This Court granted CSI's motion for summary judgment on its breach-of-contract claim with its damages and fees remaining to be decided by a jury or the Court.

Selective's main argument in opposition to the award of any fees is that any recovery under Section 155 must arise out of an action by a policyholder to enforce the terms of the policy. Inasmuch as Selective claims the present action does not involve a determination of Selective's liability under an insurance policy, no fees to CSI are authorized per Selective. Selective argues that the "action" referred to in the statute means the declaratory judgment action before Judge Flynn in the Cook County Circuit Court and not the instant action.

Selective's position is both factually and legally wrong. There are a number of cases in which a Section 155 claim is consolidated with a breach-of-contract claim as in this case. CSI's breach-of-contract claim, already determined by this Court to be meritorious, is an action involving the liability of the insurance company Selective. *Keller v. State Farm Insurance Co.*, 180 Ill.App.3d 539, 536 N.E. 2d 184 (5th Dist. 1989). There remains to be decided the amount of the loss payable by virtue of the breach of contract already found by the Court, a matter squarely encompassed by the language of Section 155.

## COLLATERAL ESTOPPEL

Selective's next attack is that the doctrine of collateral estoppel prevents previously unrecovered fees and expenses related to the underlying Oregon action from being recovered. It is Selective's assertion that the Illinois courts have already determined the fees and expenses CSI was entitled to recover against Selective.

In order for collateral estoppel to apply, all of the following conditions must be present: (1)The issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated in the prior action; (3) the determination of the issue was essential to the final judgment in the prior action; and (4)the party against whom estoppel is invoked was fully represented in the prior action.

No court has had before it the application of Section 155 and possible liability thereunder in any prior proceeding. The Illinois courts have held that Selective owed CSI a duty to defend the Oregon action and have determined the amount required to reimburse CSI for the defense costs incurred by it because of Selective's refusal to do so. CSI also asserts that none of the fees and expenses sought in this action have been awarded by any other courts.

The Section 155 standard of unreasonable and vexatious conduct alleged by CSI has never been litigated previously before any other court. The presentation of witness testimony and documentary and other evidence have all been directed to the issue of whether Selective's conduct in this never-ending saga acted unreasonably and vexatiously at any time in its dealings with CSI, its insured. There is simply no basis

to conclude that some form of estoppel is operative between these parties as to Section 155 liability on the part of Selective.

## PROPORTIONALITY DEFENSE

Selective also contends that CSI's current request for fees is disproportionate to the $195,000 in defense costs incurred after Selective refused to defend the Oregon action.  Section 155 awards are neither an award of damages nor reimbursement for necessary costs for an insured to defend itself.  As has been held in this court, *UNR Industries, Inc. v. Continental Ins. Co.*, 607 F.Supp. 855, 866–677 (N.D. Ill. 1984):

> . . . the provisions of § 155 are fully explainable in terms of a punitive purpose, and some of its provisions are *only* [emphasis in original] explainable in terms of that purpose. As already noted, §155 applies only when the insurer's conduct was vexatious and unreasonable. That limitation makes perfect sense if the award is intended to punish the defendant, but little sense if the award is intended to compensate the plaintiff since the need for compensation is wholly independent of the vexatiousness of the insurer's conduct. Similarly, the computation of the statutory award is consistent with a punitive but not a compensatory purpose. The award is not figured by looking to the losses sustained, but rather to the amount of reasonable attorneys' fees incurred. While that method of computation is consistent with a punitive purpose, [citations omitted], the amount of attorneys' fees bears no necessary relation to the amount of loss.

The objective of Section 155 is to ensure the prevailing party the ability to recover full costs.  *Rosenburg v. Lincoln American Life Ins. Co.*, 883 F.2d. 1328, 1340 (7th Cir. 1989).  The term "other costs" in Section 155 is given a broad interpretation with the goal of placing "the insured in as good a position as he would have been had

the insurer paid the value of the claim when requested." *Watson v. State Farm Fire & Casualty Co.*, 122 Ill.App.3d 559, 461 N.E.2d 57, 61 (3d Dist. 1984).

## OTHER LITIGATION

In light of the purpose of awards under Section 155 and in light of the multiplicity of actions taken by and against CSI as a consequence of Selective's refusal to honor its contract of insurance with CSI, it is necessary to determine whether CSI's actions were reasonable and necessary under the then-existing circumstances. Section 155 provides an extra-contractual remedy to policyholders whose refusal to recognize liability and pay a claim is vexatious and unreasonable. We have determined that Selective's conduct met that standard, starting with the issuance of David Hahn's rejection of coverage letter of June 22, 2012, to CSI.

Because CSI was put in a position of having to defend itself of charges of infringement, its posture as a defendant was forced upon it. Those defensive actions were manifestly reasonable and necessary. Although there can be no double recovery by CSI, fees and expenses of defense counsel are within the purview of Section 155.

CSI's Illinois case against Too Marker, the Oregon plaintiff, was undertaken because Gragg was named personally as a defendant in the Oregon action. Oddly enough, the sixth ground for denial of the duty to defend asserted by Selective was that trademark infringement was not within the scope of the duties of an executive officer. Mr. Hahn apparently believed Gragg was a law violator based simply on an allegation

6

made in a federal civil complaint and that it was perfectly proper to indulge that personal belief in deciding Selective's contractual obligation as to its duty to defend.

If an insurance company was free to decide for itself whether an executive of an insured company was guilty of misconduct based merely on an allegation of a court-filed complaint, there would be precious few cases in which coverage would be offered under the terms of any insurance policy. The offensive Illinois action against Too Marker was a reasonable and necessary strategy in order to defend Mr. Gragg.

CSI's suit against Alpha for implied warranty of noninfringement and indemnification was also reasonable and necessary, given that CSI was not the manufacturer of the markers it sold but merely a link in the chain of distribution. Although successful in the Illinois actions pitting CSI and Selective in their coverage dispute actions, CSI's was a classic example of a Pyrrhic victory. The Illinois Appellate Court's ultimate affirmance of CSI's legal triumph would not be enough to reverse the demise of the insured company Selective was duty bound to defend.

## **FEES AND EXPENSES RELATED TO DAVID HAHN**

Selective has lodged specific objections to fees and expenses incurred by CSI on matters involving David Hahn. The first challenge relates to CSI's reporting the Court's Section 155 ruling to the Illinois Department of Insurance. CSI argues that, in addition to being directly related to the findings and conclusions made in the Section 155 trial, Selective neglected to make its own timely notification to the state agency responsible

for the oversight of insurance companies. As such, those fees and expenses are recoverable as part of and ancillary to the instant action.

Selective also complains that attempts to disqualify David Hahn are not compensable. Motions were filed in this action due to an apparent conflict of interest on Mr. Hahn's part. As previously described, in denying CSI's request for insurance coverage at the initial stages of the Oregon lawsuit, Mr. Hahn was not only the authoritative voice in the decision to decline to defend CSI, he was essentially the sole decisionmaker. The Section 155 trial had, as its evidentiary centerpiece, the bona fides of the reasons Mr. Hahn asserted in support of the decision not to defend. To act as a lawyer in defense of his own prior conduct was problematical. Coupled with the lack of clarity as to what his role would be at trial, it was necessary and appropriate for Mr. Hahn's role to be defined. This was done at the outset of the trial. CSI's conduct in this regard was eminently reasonable and proper.

### REASONABLENESS OF THE FEES OF BISHOP DIEHL AND LEE, LTD.

Selective asserts that CSI's fee petition "requests payment of every conceivable fee and expense allegedly incurred in 16 different categories addressing a surprisingly expansive range of matters." It then argues that, at best, "the broadest possible scope of recoverable fees would be those incurred in 3 of the 16 matters."

Against that broadside challenge, CSI counters with the following:

> The Court should view CSI's aggregate cost to see if they were reasonable in view of the stakes and Selective's litigation strategy. CSI's total fees of $2.8 million for seven years of contentious litigation on

multiple fronts, including Selective's three appeals, all spawned from Selective's vexatious and unreasonable refusal to defend CSI. In this action and all the actions, Selective's strategy was to make CSI litigate for everything it should have been entitled to. Selective has lost at every turn. If Selective had defended as it should have, none of these actions would have been necessary. Selective's griping about CSI's fees should be ignored.

Any fair assessment of the conduct and positions taken by Selective was to fight CSI at virtually every turn. Its resistance would have been reasonable and understandable if the decision to decline coverage had been based on meritorious reasons relevant to policy language when compared to an honest reading of the Oregon lawsuit claiming product infringement. The conclusion is inescapable that Mr. Hahn thought that Mr. Gragg and CSI were law violators after he, in violation of the four corners rule, did his own personal investigation and found them both guilty. Selective fought CSI tooth and nail ever since, and the only time it performed under the terms of the insurance contract is when a judge ordered them to do so.

Based on *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), a painstaking line-by-line analysis of CSI's invoices is not necessary. That is particularly apt in this case because of the heavy burden on CSI to prove Selective's conduct was vexatious and unreasonable. Due to the uncertainty of recovery, whether by court decree or infusion of resources to CSI, there was every incentive on the part of CSI to minimize fees and expenses as opposed to acting like a spendthrift.

In addition to other challenges, Selective offers the report and opinions of Rick Hammond as to the alleged unreasonableness of CSI's fees and expenses. Mr.

Hammond testified in the Section 155 case in chief and is, apparently, being proffered as an expert in legal fees and related matters.

With due respect to Mr. Hammond's professional background, there is no basis upon which to conclude that he is an expert on fees and expenses as to insurance cases generally and Section 155 cases particularly. The Court has made no such finding and expressly declines to do so. Nor is there any basis to conclude any report or study he sponsors is the product of reliable principles and methods or that he reliably applied the principles and methods to the facts of the case.

In the Section 155 liability phase of the case, during which Mr. Hammond was proffered as an expert witness, the overarching issue was whether the June 22, 2012 letter authored by Mr. Hahn reflecting declination of Selective's duty to defend, along with reasons for the declination, were well founded in fact and law, reflective of industry standards, and otherwise meritorious. Although declared to be an expert in coverage issues, instead of making his own analysis of the letter in light of the described standards, Mr. Hammond offered no testimony as to the letter's bona fides. He simply adopted Selective's position that the letter was true, accurate and correct, and went on to tutor the Court about the general custom and practice of insurance companies filing declaratory judgment actions as an offensive tactic. The tutorial was unhelpful.

## CONCLUSION

The Court grants CSI an award of $2,846,049.34 in fees and expenses based on Selective's Section 155 conduct of unreasonable and vexatious conduct incurred up to and including February 28, 2019. CSI is also given leave, upon completion of the contract damages trial, to supplement its request for fees and expenses incurred upon entry of final judgment entered against Selective. Upon determination of all final fees, costs, expenses and other judgments, prejudgment interest shall be awarded at the conclusion of the proceedings. It is so ordered.

Dated: 11/12/2019

_____
Charles P. Kocoras
United States District Court Judge