UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CREATION SUPPLY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SELECTIVE INSURANCE COMPANY )<br>OF THE SOUTHEAST, )<br>)<br>Defendant. ) | 14 C 8856 |

### MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

In the opening paragraph of its opinion regarding the applicability of Section 155 of the Illinois Insurance Code in this case, the Seventh Circuit Court of Appeals described this dispute as "part of an ongoing, decade-long, three-lawsuit fight between an insurer, Selective Insurance Company of the Southeast, and its insured, Creation Supply, Inc. ("CSI"), over who owed what when." *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576 (7th Cir. 2021) *reh'g denied* (June 17, 2021). Court actions have been lodged in the U.S. District Court of Oregon; the Circuit Court of Cook County, Illinois, on two occasions; the Illinois Appellate Court on two occasions; the U.S. District Court for the Northern District of Illinois on two occasions; and the U.S. Court of Appeals for the Seventh Circuit once. When this Court issues its judgment and opinion, a second trip to the Seventh Circuit is inevitable.

A little procedural history is helpful in order to follow the trail the main dispute between the parties has taken. Back in 2012, CSI was in the business of importing and selling writing markers. In 2012, a company named Too Marker sued CSI in federal court in Oregon, alleging that CSI was infringing its trademark rights in its own writing markers.

As a consequence of the Oregon suit, CSI requested Selective Insurance Company of the Southeast ("Selective"), its insurer, to provide a defense to the suit. Selective declined to do so, citing a host of reasons why it had no duty to defend CSI. Selective then sued in Illinois state court for a declaratory judgment that it had no duty to defend CSI in the Oregon trademark infringement action.

While the Illinois state court action was pending, CSI settled the Oregon case for $0 but acceded to an injunction to stop selling the allegedly infringing markers. Meanwhile, CSI filed counterclaims in the Illinois state action, seeking a declaration that Selective owed it a defense and indemnification in the Oregon federal case. In addition, CSI counterclaimed that Selective breached its contract with CSI. CSI's counterclaim for breach of contract by Selective not only sought damages for the breach, but alleged in a separate count of the counterclaim that Selective was liable for vexatious conduct under Section 155 of the Illinois Insurance Code, 215 ILCS § 5/155. On January 29, 2013, the state trial court dismissed without prejudice CSI's Section 155 claim for penalties. CSI's breach of contract counterclaim remained pending in state court.

On November 5, 2014, CSI filed this lawsuit in this Court. The suit contained two counts, one for breach of contract and one for Section 155 violations. Notwithstanding the continued vitality of CSI's breach of contract counterclaim still pending in state court, the same allegations were repeated in this federal lawsuit. The Section 155 allegations that first appeared in the Illinois state action were also repeated in this Court. A later bench trial on the Section 155 claim resulted in an award to CSI, which was the subject of the Seventh Circuit decision cited above.

In holding that Section 155 did not apply, the Seventh Circuit said Section 155 requires that at least one of three issues remains undecided: (1) the insurer's liability under the policy, (2) the amount of the loss payable under the policy, or (3) whether there was an unreasonable delay in settling a claim.

The Seventh Circuit found that none of these three threshold issues remained undecided: (1) Selective's liability under its policy was resolved by the Illinois Appellate Court in 2015; (2) the amount of loss payable by Selective to CSI under the policy was determined by the Illinois Appellate Court in 2017; and (3) CSI does not seek recovery for any unreasonable delay by Selective in settling CSI's claim.

In so holding, the Seventh Circuit established the law of the case. In its Motion for Judgment on the Pleadings, Selective asserts, among other reasons for its position, that the law of the case is a bar to any further legal proceedings between the parties as to breach of contract damages.

The records of the state court proceedings establish that CSI's renewed motion for partial summary judgment for breach of contract was granted on December 19, 2013, for failure to defend the Oregon action. On remand from the Appellate Court, the state trial court entered an order on CSI's fee petition. The state trial court entered a final judgment in favor of CSI for $392,147.61, to be offset by $178,000 already paid in November 2015.

A second appeal by Selective resulted in an order requiring recalculation by the state trial court of the award. On remand, the state trial court entered a final judgment of $195,070.27, which was offset by the $178,000 already paid by Selective. The net difference of $17,027.27 was then paid by Selective.

In addition to the law of the case doctrine barring further action as to CSI's breach of contract claim, Selective also asserts that CSI's contract damages claim is barred by claim and issue preclusion, that is, *res judicata*.

There is no meritorious dispute by the parties that a final judgment as to both liability and damages as to which CSI was entitled was issued by the state court. The question for claim preclusion purposes is if the issues arise from a single group of operative facts, irrespective of whether different theories of relief are maintained in the separate actions. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 21. Claim preclusion applies not only to matters that were actually decided in the original action but also to matters that could have been decided. *Id.* ¶ 18.

As set forth in Selective's Memorandum in Support of its Motion for Judgment on the Pleadings, CSI's claims in both this federal case and in the state case arose from the exact same set of operative facts: Selective's denial of coverage under its policy issued to CSI and CSI's claim for damages arising from that denial.

The state court ruled that Selective breached the policy and was liable to CSI for damages arising from that breach. *Selective Ins. Co. of the Se. v. Creation Supply, Inc*, 2015 IL App (1st) 140152-U, ¶ 15. CSI filed its fee petition in the state court action, seeking as compensatory damages recovery of the attorney's fees it incurred in defending the Oregon action and Selective's declaratory judgment action, as well as its offensive action in the Alpha matter. *Selective Ins. Co. of the Se. v. Creation Supply, Inc*, 2017 IL App (1st) 161899-U, ¶ 17. The Alpha matter related to CSI's suit for indemnification from its supplier of the markers which were the subject of the Oregon federal suit accusing CSI of infringement by a CSI competitor in the marker marketplace.

In its opposition to Selective's Motion for Judgment on the Pleadings, CSI asserts the Illinois courts never decided CSI's breach of contract claim. This omission, it is argued, establishes a fatal foundational flaw in Selective's reliance on *res judicata* per CSI. As a result, CSI's argument goes, *res judicata* and the resultant claim preclusion cannot stand.

CSI's assertion that the Illinois courts never decided CSI's breach of contract claim is simply not true. Both CSI and this Court relied on state court actions to

5

establish Selective's breach of the insurance policy. Our prior Memorandum Opinion makes that plain. Dkt. # 146, at 7. And to quote the Seventh Circuit, "Selective's liability under the policy was fully decided in 2015 when the Illinois Appellate Court held the Oregon action 'triggered Selective's duty to defend Creation Supply.'" *Creation Supply*, 995 F.3d at 578.

It was on the strength of the various state court actions that Selective made damage payments to CSI in the amount of $195,070.27 and CSI accepted that sum. No such transfer of funds would have occurred but for the judgment and mandates of the Illinois courts.

In its opposition papers, CSI refers to that sum as incidental relief. It is difficult to minimize, by language, a sum of that size. In stretching the point, it is also argued that the fees and costs sought were based on Selective's breach of the duty to defend and not as contract damages. Not to be ignored is the fact that the single contract between the parties imposed a duty to defend CSI by Selective, not to pay a certain sum of money at a certain time. It was the breach of that contract provision that the court system determined the damage award was recompense for breach of the sole contract between the parties. The duty to defend was, in fact, a contract provision, and the award reflected the dollar measure of its breach.

There was only one breach of contract here, even as there exist myriad ways to breach the contract. The breach was a failure to defend by an insurer owed to its

insured. That single breach caused financial harm to CSI, and the law required compensation for the harm or damage incurred.

In addition to the defenses alluded to previously, CSI also interposes others in an effort to preclude Selective from prevailing on its motion. Those defenses include the following:

> 1. The Motion for Judgment on the Pleadings based on *res judicata* or collateral estoppel is far too late.

> 2. CSI did not split its contract claim between the state and federal actions and, even if it did, CSI received a reservation of the right to refile from the presiding state court judge.

> 3.CSI is not seeking fees it has already been awarded, and the Illinois courts have never determined Selective's liability for breach of contract or CSI's resulting damages.

> 4. CSI's claim for attorney's fees is not barred by the law of the case doctrine. The Seventh Circuit did not determine that the damages otherwise recoverable under an alternate theory of recovery were barred by any particular issue it decided.

## SUMMARY

It would not be surprising if this Court's current decision and supporting opinion was described as highly ironic. Our prior decision awarding damages to CSI in the Section 155 case was based on Selective's refusal to defend CSI in the Oregon lawsuit. We held that the reasons that were relied on by Selective were either all or mostly specious.

Nevertheless, the outcome pronounced today is based on settled law and is in harmony with the Seventh Circuit's opinion dealing with the punitive provisions of a

Section 155 violator. The breach of contract claim and the damages flowing from it were, for a time, pending both in this Court and the Circuit Court of Cook County simultaneously. Even after the claimed reservation was secured, CSI continued to litigate its damages claim in both the state trial and appellate courts.

The insurance policy between the parties reflected the contractual terms which obligated Selective to cover upon the occurrence of any of the conditions outlined in the policy. Upon payment of the premiums by CSI, its duty under the contract, Selective would defend and pay any damages CSI might suffer. Those were the mutual contractual obligations of the parties.

In its decision resolving the Section 155 case, the Seventh Circuit opined, as follows:

> Then, based on that definition of the policy's scope, the Illinois Appellate Court excluded from its award to CSI various costs that arose after the settlement because they were not covered by the policy. Thus, the only loss payable under the policy was the $195,000 that CSI spent in the Oregon action before reaching settlement – nothing more and nothing less. And that means there's nothing left to decide about the amount that Selective owed to CSI under the policy.

*Creation Supply*, 995 F.3d at 578.

The Seventh Circuit's holding as the law of the case is consistent with the principle of *res judicata*. CSI was prosecuting claims for Selective's breach of contract in two different courts, sometimes concurrently. Under either of the two legal principles described, relitigation of issues expressly decided in one case or by compelling implication is barred.

A chronology of events taking place in the state and federal courts is helpful to an understanding of key events:

**December 19, 2013:** The state trial court granted summary judgment to CSI on its counterclaim Count II, alleging breach of contract.

**November 5, 2014:** CSI filed the federal lawsuit.

**February 9, 2015:** The state court of appeals affirmed CSI's summary judgment on the issue of Selective's breach of contract.

**June 21, 2016:** CSI "voluntarily dismissed" its breach of contract claim in the state court action and obtained its "reservation."

**June 30, 2017:** The state court of appeals issued its ruling on what legal fees were owed by Selective as compensatory damages due to its breach of contract.

**October 2, 2017:** The state court entered final judgment on CSI's compensatory damages for Selective's breach of the duty to defend under the contract.

As can be seen, CSI filed this case seventeen months before it requested the state court "reservation" and received a final judgment in the state case fifteen months after receipt of the "reservation." As the Seventh Circuit noted, "the Illinois Circuit Court was not wrong at the time it made this reservation, which was long before Selective's liability and the amount owed under the policy were resolved. But those issues have now been resolved." *Creation Supply*, 995 F.3d 576.

Since the state court made a final judgment on the breach of contract claim after the reservation and determined the damages suffered by virtue of the breach, the prior reservation has fallen out of the case. The reservation has no relevance or application to any issue pending before this Court.

Additionally, there was in fact no reservation by CSI in bringing or maintaining a breach of contract action at some time or place other than in state court. CSI litigated its claim for compensatory damages for defense costs for over two years in the state courts, both at the trial and appellate levels. It was ultimately successful to the tune of approximately $200,000. That award was legally predicated on the same contract of insurance and for the same breach that is being litigated in this case. Although the damages now claimed may well differ from those awarded in state court, they could have been pursued there. There is no evidence that Selective ever agreed to terms that CSI could split its claims based on contract breach and pursue damages for that breach in two different courts.

Any reliance by CSI on Selective's counsel's remark "that's fine" is unclear and imprecise, referring perhaps to the form of the order. It is clear that there is no oral or other manifestation of agreement to the substance of any language used agreeing to claim-splitting by CSI. Additionally, Illinois law holds that the time to object to claim-splitting is not at the time of voluntary dismissal; a defendant has almost no basis to object to a first-time voluntary dismissal, and certainly not on *res judicata* grounds. *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 48.

It is an irresistible truth that Selective has challenged CSI's claims at every turn. From the beginning, Selective has used a myriad of grounds in denying that it had a duty to defend CSI's claim. Agreeing to being sued in two different courts in sometimes simultaneous actions is unimaginable.

CSI also objects to the timeliness of Selective's Motion for Judgment on the Pleadings as too late. Selective responds to the argument by reference to its use of the word "estoppel" in asserting an affirmative defense in its Answer to the Complaint. Selective maintains, based on Illinois law, that the doctrine of *res judicata* is divided into two branches: estoppel by judgment, sometimes referred to as *res judicata*; and estoppel by verdict, also known as collateral estoppel. *Redfern v. Sullivan*, 111 Ill. App. 3d 372, 375 (4th Dist. 1982).

In its original Pretrial Brief submitted in 2017 for the then-scheduled trial on breach of contract damages, Selective advised that it would argue that *res judicata* barred CSI's contract damages claim. In the long history of the dispute and litigation, the matters of claim and issue preclusion have been presented and discussed. Selective's Reply to CSI's Opposition to the instant Motion is replete with references to *res judicata*, collateral estoppel, and other synonymous references.

Although the timing of Selective's Motion for Judgment on the Pleadings could have been better for the parties and the Court, it cannot be said to be unfair or surprising to CSI. Given the effect of the dreaded COVID-19 on the country and, particularly, the scheduling of jury trials in the court systems of the country, earlier-filed motions of this type would have been less inconvenient. There is simply no basis, however, to not consider fully the rights and obligations of all litigants and give respect to all important positions when presented. The substance of the law, as presented by the parties, is often more important than the timing of their presentment.

11

## **CONCLUSION**

Finding the Motion for Judgment on the Pleadings filed by Defendant Selective Insurance Company of the Southeast meritorious and for the reasons set out in the Court's Opinion, the Motion is granted. Civil case terminated. It is so ordered.

Date: 10/28/2021

_____
Charles P. Kocoras
United States District Judge